# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-591

**STATE OF LOUISIANA**

**VERSUS**

**ANTHONY DEWAYNE CYRIAK**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 289,576
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Billy Howard Ezell, Judges.

**AFFIRMED.**

**James C. Downs**
**District Attorney**
**701 Murray Street**
**Alexandria, LA   71301**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**Mark O. Foster**
**Louisiana Appellate Project**
**Post Office Box 2057**
**Natchitoches, LA   71457**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Anthony Dewayne Cyriak**

**Anthony Dewayne Cyriak**
**Winnfield Correctional Center**
**Post Office Box 1260**
**Winnfield, LA   71483**

AMY, Judge.

The defendant was convicted of aggravated battery and sentenced to twenty years imprisonment at hard labor. The defendant appeals, challenging the evidence used to convict him and questioning his sentence as excessive. For the following reasons, we affirm.

**Factual and Procedural Background**

The events at issue in this case occurred on the evening of September 3, 2007, and into the early morning hours of September 4, 2007, in Rapides Parish. According to Michael Dwayne Johnson's trial testimony, he met up with a friend to buy some drugs from Anthony Dewayne Cyriak. Mr. Johnson alleges that, after buying the drugs, his friend convinced him to let Mr. Cyriak borrow his car for a couple of hours. Mr. Johnson related that, after waiting with his friend for a long period of time, he decided to go walking to look for Mr. Cyriak and retrieve his vehicle. He testified that he saw the vehicle, empty, stopped at a stop sign, and he got into the passenger seat and waited for Mr. Cyriak. Mr. Johnson alleged that Mr. Cyriak got into the vehicle, pulled out a gun, and started demanding money from him. Mr. Johnson stated as follows:

> Well, he pulled a gun on me, so I told him, well, we can like ride around until we, until the bank [sic] open and I will try to go and get some money, but I knew I didn't have no money in no bank, you know. I just knew if I go to the bank I could call the police on him - - tell the people to call the police on him.

Mr. Johnson testified that the two men went to the bank, however it was closed. Mr. Johnson related that, at this point, Mr. Cyriak let him drive the car, and the two men ended up on Old Boyce Road in Alexandria, Louisiana. While on Old Boyce Road, it is alleged that the two men began struggling over the gun, Mr. Cyriak shot Mr. Johnson several times, and Mr. Johnson came to rest on the side of the road.

Ms. Kimberly Howell testified that, in the early morning hours of September 4, 2007, she heard gunshots outside of her home on Old Boyce Road. She related that, as she reversed her car out of the driveway, she saw Mr. Johnson walking down the middle of Old Boyce Road. After realizing that Mr. Johnson needed medical assistance, she called 911 and Mr. Johnson was transported to the local hospital. At the hospital, Mr. Johnson was treated for gunshot injuries to his leg and was later released.

On January 29, 2008, Mr. Cyriak was charged by bill of information with attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1; second degree kidnapping, a violation of La.R.S. 14:44.1; and unauthorized use of a motor vehicle having a value in excess of one thousand dollars, a violation of La.R.S. 14:68. The defendant pled not guilty to the three charges.

After trial, on August 12, 2009, the jury found the defendant guilty of the responsive verdict of aggravated battery and found the defendant not guilty on the second degree kidnapping and unauthorized use of a motor vehicle charges.

On August 18, 2009, the defendant was charged by bill of information as a habitual offender. On October 16, 2009, the defendant was adjudicated as a second felony offender.[1] He was subsequently sentenced to serve twenty years imprisonment at hard labor.

The defendant appeals, asserting two assignments of error. In a counsel-filed brief, the defendant asserts that the trial court violated his constitutional right to a jury trial when it used the two offenses on which the jury found him not guilty as

---

[1] In the habitual offender trial transcript, it reads that the defendant pled guilty to being a habitual offender, however, the transcript also indicates that the trial court took evidence on that matter. We note, that the court minutes state on August 21, 2009, the defendant pled not guilty.

2

aggravating factors when imposing the maximum sentence, resulting in an excessive sentence. In a pro-se brief, the defendant contends that there was insufficient evidence to convict him of aggravated battery.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

*Pro-Se Assignment of Error*

In his pro-se assignment of error, the defendant contends that there was insufficient evidence to support his aggravated battery conviction.

In reviewing the sufficiency of the evidence to support a conviction, a reviewing court is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781(1979). *State v. Tate*, 01-1658 (La. 5/20/03), 851 So.2d 921, *cert. denied*, 541 U.S. 905, 124 S.Ct. 1604 (2004). Under the *Jackson* standard, the reviewing court must determine whether the evidence, when viewed in a light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. *Id.*

Aggravated battery is defined in La.R.S. 14:34 as "a battery committed with a dangerous weapon." Battery is defined, in part, as "the intentional use of force or violence upon the person of another[.]" La.R.S. 14:33.

The defendant contends that there are several problems with the evidence in this case which support a finding of insufficient evidence to support his conviction.

3

First, the defendant asserts that there was no direct or physical evidence linking him to the instant crime. He contends that the State relied only on the testimony of Mr. Johnson, an alleged drug addict who admitted to being on drugs at the time of the instant crime and on pain medication during his statement to police. He also asserts that he was identified by Mr. Johnson only after a highly suggestive police "lineup." Lastly, the defendant asserts that in his testimony, Mr. Johnson stated that during the struggle for the gun, he bit the perpetrator. The defendant notes, however, that no one testified that the defendant suffered from bite marks after the alleged crime took place.

The record reveals that Mr. Johnson testified that he used drugs between 9:00 p.m. and 10:00 p.m. on the night preceding the early morning shooting. He further related that he only felt the effects of the drugs for about fifteen minutes and did not feel the effects when he had the altercation with the defendant. Mr. Johnson also testified that at the time he gave his statement to police he was taking "pain treatment." He did not explain what was meant by the term "pain treatment." However, the jury was fully aware of Mr. Johnson's drug use and chose to credit his testimony, specifically that the defendant shot Mr. Johnson several times in the leg. "The credibility of the witness is a matter of weight of the evidence, not sufficiency, and determination of the credibility is left to the trier-of-fact's sound discretion and will not be re-weighed on appeal." *State v. Jeter*, 09-1004, p. 3 (La.App. 3 Cir. 4/7/10), 33 So.3d 1041, 1043-44. As such, despite the defendant's assertions calling into question Mr. Johnson's credibility, it is clear that the jury chose to believe Mr. Johnson's testimony and that determination will not be second-guessed on appeal by this court.

4

Further, while the defendant complains about a suggestive photographic lineup, he did not file a motion to suppress and no objection was lodged in the record regarding Mr. Johnson's identification of the defendant. Thus, the issue of the alleged suggestive nature of the lineup is not properly before this court on review. *State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-1285 (La. 11/22/06), 942 So.2d 553.

This assignment of error lacks merit.

*Excessive Sentence*

In his next assignment of error, the defendant contends that the trial court violated his constitutional right to a jury when it used the two offenses for which the jury found him not guilty as aggravating factors when imposing the maximum sentence, resulting in an excessive sentence.

In *State v. Fontenot*, 09-1044, pp. 4-6 (La.App. 3 Cir. 5/12/10), 38 So.3d 1122, 1125-26, a panel of this court stated:

> The Eighth Amendment to the United States Constitution and La. Const. art. 1, § 20 prohibit the imposition of cruel or excessive punishment, and the law is well settled with regard to what constitutes cruel or excessive punishment. An excessive sentence is a penalty that is so grossly disproportionate to the severity of the crime that it shocks our sense of justice or it makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). Additionally, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, the reviewing court should not deem as excessive a sentence imposed within statutory limits. *State v. Howard*, 414 So.2d 1210 (La.1982); *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. Still, a sentence that falls within the statutory limits may be excessive under the particular circumstances of a given case. *State v. Sepulvado*, 367 So.2d 762 (La.1979). Additionally, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for the reviewing court to consider is not whether another sentence would be more appropriate, but rather whether the trial

5

court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Louisiana Code of Criminal Procedure Article 894.1(A) provides that the trial court should impose an imprisonment sentence if any of the following are established by the record:

> (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.

> (2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.

> (3) A lesser sentence will deprecate the seriousness of the defendant's crime.

Additionally, the trial court must "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). However, in complying with this article, the trial court "need not articulate every circumstance or read through a checklist of items." *State v. Anderson*, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483.

In brief, the defendant argues as follows:

if a jury finds a defendant not guilty of specific crimes, can a trial court, in sentencing the defendant on another crime, make a specific finding in opposition to the jury's finding of not guilty, as a basis for enhancing the defendant's sentence. This is exactly what the trial court did to Mr. Cyriak. To justify the maximum sentence, it specifically found Mr. Cyriak committed the crimes for which he was acquitted.

In determining what sentence to impose, the trial court first found several aggravating factors, as follows:

> As a aggravating factor, I'm going to find that [the defendant's] conduct during the commission of the defense [sic] manifested delivered [sic] cruelty to the victim. The facts in this case was [sic] that the defendant, Mr. Cyriak, shot the victim in his leg with a firearm which caused the defendant [sic] to lose quite a bit of blood and to become unconscious on Old Boyce Road and basically, his life was saved by the lady that stopped and called an ambulance for him, uh, got him some medical care.

6

Further, the trial court found aggravating the fact that the defendant, in the commission of the offense, used threats of or actual violence, used a dangerous weapon, a firearm, and endangered human life. Further, the trial court took notice of the defendant's criminal history ranging from the age of eight to the present.[2]

Additionally, at sentencing, the State informed the trial court that, at the time of this offense, the defendant was on parole from an earlier offense. The trial court stated that it found no mitigating factors. Further, the trial court noted information relating to the defendant's personal history: his birth date, that he was unmarried, that he had two children, and was not employed.

After reviewing the defendant's criminal history and finding several aggravating factors, the trial court stated:

> I find that his . . . behavior with the victim in this matter . . . was cruel, it was dangerous, and there was absolutely no reason for any of that behavior. I believe that Mr. Cyriak kidnapped [the victim], transported him somewhere for him to receive money from an ATM and then after that, shot Mr. Johnson in the leg, which caused a very serious injury.
>
> Based upon Mr. Cyriak's record, and the aggravating factors that are stated for the record, and the mitigating factors that are stated for the

---

[2]  At the sentencing hearing, the trial court reviewed the defendant's juvenile record and found the following arrests: 1) 1996, at the age of eight, for criminal mischief; 2) July 11, 2002, for criminal damage; 3) July 2002, for theft; 4) August 2, 2002, at the age of thirteen, for nine counts of criminal damage; 5) January 19, 2003, for improper or switched license plate; 6) January 20, 2003, for violation of a city ordinance; 7) March 10, 2003, for two counts of simple battery; 8) March 24, 2003, for aggravated battery; 9) July 8, 2003, for simple criminal damage to property; 10) June 23, 2004, for failing to leave a premise after being forbidden and three other charges; and 11) March 13, 2005, for three counts of aggravated assault for shooting into a residence.

The trial court discussed the defendant's adult record as follows: 1) arrested in 2006 for resisting an officer and felony possession of CDS IV; 2) arrested on January 21, 2006, for "disturbing the peace, fighting, remaining on the premises"; 3) charged on April 24, 2006, for obstruction of justice; 4) arrested on April 24, 2006, for resisting an officer, trespassing, and possession of marijuana and was convicted; 5) arrested on July 12, 2006, for possession with intent to distribute CDS II and was convicted on March 11, 2009; and 6) arrested on August 25, 2006, for unauthorized use of a motor vehicle.

record, I will order that he serve that 20 years at hard labor with the Department of Corrections as a second felony offender.

We find after a review of the record, that the trial court thoroughly reviewed the defendant's criminal history, the defendant's background, and the nature of the offense at issue before imposing the present sentence. We find that the defendant's assertion that the trial court considered its aquittal of the kidnapping charge "too remote [a possibility] to justify setting aside a sentence otherwise fully supported by the record." *State v. Myles*, 94-217, p. 3 (La. 6/3/94), 638 So.2d 218, 219.

The defendant was convicted of aggravated battery and adjudicated a second felony offender. The applicable sentencing range is five to twenty years. La.R.S. 14:34; La.R.S. 15:529.1. The defendant was sentenced to serve twenty years at hard labor, the maximum sentence. In the instant case, in sentencing the defendant, the trial court thoroughly considered the defendant's background and nature of the offense. The defendant shot Mr. Johnson in the leg, causing him to lose a substantial amount of blood and become unconscious on the side of the road. The defendant also had an extensive arrest record, including a prior felony conviction for possession with intent to distribute a schedule two controlled dangerous substance. The trial court also considered that the defendant's probation for that prior offense was revoked and, when he was later paroled, he committed the current offense after being out of prison for less than four months.

We find that based upon the defendant's criminal history, the nature of the offense, the defendant's sentence is not excessive.

This assignment of error lacks merit.

## DECREE

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**