# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-426


STATE OF LOUISIANA

VERSUS

TYRONE MITCHELL



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 53423-B
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.


**CONVICTION AFFIRMED. REMANDED WITH INSTRUCTIONS.**


**Michael Harson**
**District Attorney, Fifteenth Judicial District**
**F. Stanton Hardee, III**
**Assistant District Attorney**
**100 Borth State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Teresa Culpepper Carroll**
**Bobby L. Culpepper & Assoc.**
**525 East Court Ave.**
**Jonesboro, LA 71251-3497**
**(318) 259-4184**
**COUNSEL FOR DEFENDANT-APPELLANT:**
       **Tyrone Mitchell**

**Tyrone Mitchell**
**Hickory 2**
**Louisiana State Prison**
**Angola, LA 70712**
**PRO SE**

**PICKETT, Judge.**

## FACTS

The defendant, Tyrone Mitchell, allegedly sold two rocks of crack cocaine to an undercover police officer during a weekend long undercover operation.  He was charged in a bill of information filed on January 4, 2011, with distribution of cocaine, a violation of La.R.S. 40:967.   The defendant was arraigned and entered a plea of not guilty on February 16, 2012.   Trial by jury commenced on July 17, 2012, and the defendant was found guilty the following day.

A bill of information charging the defendant as a habitual offender was filed on July 24, 2012, and amended on August 1, 2012.  The defendant was arraigned on August 16, 2012, and chose to remain silent.  He was adjudicated a third felony offender on December 20, 2012, and was sentenced to life imprisonment, without benefit of probation, parole, or suspension of sentence.  A motion for appeal was subsequently filed and granted.

## ASSIGNMENTS OF ERROR

The defendant is now before this court asserting the following assignments of error:

1. The jury erred in convicting him of distribution of cocaine.

2. The trial court erred in failing to grant a mistrial or at least give a contemporaneous instruction due to inappropriate questioning by the prosecutor of the prospective jury pool.

3. The trial court erred in allowing the state to use a stopwatch demonstration during rebuttal closing argument.

4. The trial court erred in failing to grant a mistrial after the state made inappropriate statements during its rebuttal closing argument.

5. The trial court erred in failing to instruct the jury to disregard inappropriate statements made by the state during its rebuttal closing statement.

6. The trial court erred in denying his request for a judge trial.

In a *pro se* brief, the defendant contends he was denied effective assistance of counsel when trial counsel failed to file pre-trial motions to suppress identification and evidence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The record does not indicate that the trial court advised the defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform the defendant of the provisions of article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant contends the jury erred, as a matter of law, in convicting him of distribution of cocaine based on insufficient evidence to support the conviction.

The supreme court explained an appellate court's function in reviewing sufficiency of the evidence claims in *State v. Spears*, 05-964, p. 2 (La. 4/4/06), 929 So.2d 1219, 1222:

2

When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See State v. Captville*, 448 So.2d 676, 678 (La.1984). That standard dictates that to affirm the conviction the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the State proved all elements of the crime beyond a reasonable doubt. *State v. Johnson*, 03-1228, p. 4 (La.4/14/04), 870 So.2d 995, 998; *Captville*, 448 So.2d at 678.

Agent Jackie Boddie testified that on October 9, 2010, she was working undercover for the Vermilion Parish Sheriff's Office. At approximately 8:45 p.m. on the date in question, Agent Boddie and Deputy Debbie Picou were flagged down by a man outside the Tiki Club. The man, who was wearing an orange shirt, orange shorts, and an orange headband, asked if they needed anything. Agent Boddie told the man she was looking for "forty hard," which meant forty dollars' worth of crack cocaine. Agent Boddie said the man, who was about one to two feet away at that time, told her to wait there and went back inside the club. Agent Boddie testified their interaction lasted approximately fifteen to twenty seconds.

Agent Boddie testified that another man subsequently approached the car and asked if Agent Boddie needed anything. Agent Boddie indicated she did not. The man, however, said he had twenty with him, and Agent Boddie then purchased drugs from him. Agent Boddie testified that she placed the drugs in a pocket in the door of the car.

The man who went back inside the club eventually returned, and Agent Boddie purchased two rocks of crack from him. Agent Boddie indicated the man got close enough to her to hand her the crack, the transaction took approximately forty-five seconds to a minute, and she focused on the man's features for future identification purposes. Agent Boddie further testified that it was "pretty dark"

3

that night, and the light inside the car was not on. She did not, however, see anyone else dressed in all orange. Agent Boddie subsequently gave Agent Travin Moore a description of the man. Agent Boddie testified that she took the two rocks, placed them in an envelope, and gave the envelope to Agent Moore approximately ten minutes later.

Agent Boddie testified the chain of custody indicated she gave the envelope to Agent Moore on October 9, 2010. When shown the rocks of crack and asked whether they appeared to be those sold to her by the man in orange, Agent Boddie stated: "As far as I can tell, yes." She was subsequently asked if she was absolutely certain that the crack cocaine shown to her in court was what the man sold to her and she transferred Agent Moore. Agent Boddie responded, "Yes." Agent Boddie made an in-court identification of the defendant as the person who sold her crack on October 9, 2010. She then indicated she was absolutely certain he was the person who sold her the crack.

Agent Boddie was presented with a photographic lineup two to four weeks after the transaction. She selected photograph five as the person who sold crack to her. Agent Boddie testified that she was sure the person in photograph five sold her crack, and the defendant was the person shown in photograph five.

Deputy Picou was working for the Vermilion Parish Sheriff's Office on October 9, 2010, as an undercover agent. Deputy Picou was with Agent Boddie outside the Tiki Club at 8:45 p.m. when a man approached the vehicle and asked if they were looking for "some hard," which meant cocaine. Deputy Picou testified the man was dressed in orange. She then made an in-court identification of the defendant as the person who approached her and Agent Boddie and indicated she was positive it was the defendant she saw. Deputy Picou testified the defendant

4

spoke with Agent Boddie for approximately ten to twenty seconds. During that time, Deputy Picou had a clear view of the defendant's face. The defendant then left the vehicle and returned to the club.

While Deputy Picou and Agent Boddie were waiting for the defendant to return, a black male approached the car and sold drugs to Agent Boddie. The defendant subsequently returned and put two white rocks of what Deputy Picou believed were crack cocaine in Agent Boddie's hand, and Agent Boddie gave him forty dollars. Deputy Picou testified that the transaction took five to ten seconds. Deputy Picou testified that it was dark outside, and the vehicle's interior light was on during the transaction.

Deputy Picou was further questioned about the transactions that occurred that night as follows:

> Q     Now, before that evening, had you ever seen the individual who made the first sale? Had you ever seen that person before that evening?
>
> A     On the first buy that we made?
>
> Q     Uh-huh (affirmative response).
>
> A     Yes, ma'am; I did.
>
> Q     And that's the same one you're talking about now, right? Or are you talking about a different one?
>
> A     The one we bought the first dope from, the person that came to the truck first?
>
> Q     Uh-huh (affirmative response).
>
> A     I had seen him before; yes, ma'am.
>
> Q     And the second person who came up, did he sell to you or did he sell to Ms. Boddie?
>
> A     He sold to Ms. Jackie.

Q	And what did she do with the item that she got from that second person?

A	She held onto it in her hand until we drove off.

Q	That's from the second person?

A	Yes, ma'am.

Q	And what did she do with the items that she bought from the first person?

A	She placed it in a brown envelope.

Q	And are you sure of those two things?

A	Yes, ma'am.

Deputy Picou subsequently agreed that she saw Agent Boddie place the crack the defendant sold to her in an envelope. Additionally, the crack sold by the defendant was kept separate from the cocaine sold by the second individual. Deputy Picou testified that Agent Boddie spoke to Agent Moore and Sergeant Jerath Bessard ten to fifteen minutes later, and Agent Boddie gave the envelope to Agent Moore.

Agent Moore, an employee of the Vermilion Parish Sheriff's Office, testified that the defendant was his third or fourth cousin. Agent Moore prepared a report regarding the instant case. On the date in question, Agent Moore was in a rental vehicle in the area surrounding the club. Agent Moore confirmed that Agent Boddie bought drugs from two individuals on that date, as Agent Moore could hear the transactions over a cell phone. Agent Boddie described the person from whom she bought forty dollars' worth of crack as wearing orange shorts, an orange shirt, and an orange headband. Agent Moore, along with others, subsequently passed through the area and could not find the defendant. When passing the club a second time, Sergeant Bessard saw someone walking out of the club and identified him as the defendant. Agent Moore then identified the defendant as the person he saw

6

walking out of the club on the night in question. Agent Moore did not see any other individuals wearing all orange on October 9, 2010, outside the Tiki Club.

Agent Moore testified that Agent Boddie gave him the envelope containing the crack cocaine she purchased. He then placed the crack in an evidence bag, which was separate from the cocaine sold to Agent Boddie by the second man that approached her. Agent Moore identified the crack shown to him as that he received from Agent Boddie, indicating he was certain about the identification.

Two to four weeks after the transaction, Agent Moore showed Agent Boddie a photographic lineup. Agent Moore testified that Agent Boddie selected photograph five, which was a photograph of the defendant, as the person from whom she bought drugs.

Agent Moore testified that he wrote "Case Number VTF-09-268" on the report regarding the instant case, which was the incorrect number. Agent Moore described the mistake as human error and gave the correct case number as 2010-268. The charge was listed as distribution of crack in the report, and that was correct. Agent Moore was asked why he listed the evidence in his report as a handmade pipe, green vegetable matter, and a hand rolled cigarette and replied, "Once again, it was human mistake. We worked so many cases that night – that weekend, probably fatigue set in at the time I tagged it, did the report. Just a mistake." Agent Moore worked fifteen cases that weekend but testified he was one hundred percent certain the instant case involved State's Exhibit Number 1, the crack cocaine sold by the defendant to Agent Boddie on October 9, 2010.

Agent Moore testified the defendant was not arrested on the night in question, as police were running an undercover operation all weekend and could not risk the safety of the purchasing agents.

Sergeant Bessard, an employee of the Vermilion Parish Sheriff's Office, testified that he was working on October 9, 2010. Approximately two to three minutes after Agent Boddie gave a description of the man who sold her crack, Sergeant Bessard saw the defendant outside the Tiki Club dressed in orange. Sergeant Bessard testified that he did not see anyone else wearing all orange that evening. He then testified he was absolutely certain the defendant was the person he saw outside the Tiki Club that night.

Officer Reginald Reed, an employee of the Vermilion Parish Sheriff's Office, testified that he was the evidence custodian. He testified that the collected evidence was placed in a vault in his office, and only he and Lieutenant Jo Ann Matthieu had access to the evidence. Officer Reed received suspected crack from Agent Moore on October 29, 2010. That evidence was logged as 10-609 and eventually submitted to the crime lab on November 5, 2010.

Amanda Hebert, an employee of the Acadiana Crime Lab, was accepted as an expert in forensic chemistry. Hebert testified that the two white rocks submitted by police were determined to be crack having a weight of 0.28 grams.

### Identification of the defendant

The defendant contends the state failed to prove beyond a reasonable doubt that he was the person that sold crack to police on October 9, 2010. The defendant argues that this court must examine the reliability of the identification according to the factors set out in *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977), which include the following: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of his or her prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the length of time between the crime and the confrontation.

The defendant contends a victim's or witness's testimony alone is sufficient to support a verdict if the *Manson* factors are satisfied. In support of this claim, the defendant cites *State v. Paul*, 11-252 (La.App. 4 Cir. 4/18/12), 90 So.3d 1191, *writ denied*, 12-1103 (La. 11/2/12), 99 So.3d 662.

The defendant asserts that Agent Boddie's description was not detailed, as she merely stated the suspect was a black male dressed in orange shorts, an orange shirt, and an orange headband. The defendant argues that Agent Boddie's interaction with the suspect lasted no more than two minutes, it was "pretty dark" at the time of the transaction, she viewed the lineup two to four weeks after the transaction, and, although Agent Boddie testified she focused on the suspect's features, she stated the light in her vehicle was not on.

The defendant asserts that Deputy Picou estimated the transaction lasted less than a minute. The defendant notes that Deputy Picou made an in-court identification of him but testified the light in the vehicle was on during the transaction, which was contrary to Agent Boddie's testimony. The defendant avers Deputy Picou testified there were numerous buys that night.

The defendant then points out that no video, audio, or photographs were taken during the transaction, and no photographs of the money used by police during the transaction were taken.

In *State v. Thomas*, 10-792, pp. 7-8 (La.App. 3 Cir. 2/2/11), 54 So.3d 1268, 1272-73, *writ denied*, 11-473 (La. 9/23/11), 69 So.3d 1157, this court discussed jurisprudence regarding the sufficiency of the evidence concerning identification as follows:

> In *State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-1285 (La.11/22/06), 942 So.2d 553, the defendant asserted his convictions were based on insufficient

evidence, particularly the witness' identification of him as the person who committed the robberies. He questioned the witness' identification because she allegedly told her son that the police identified the robber. The defendant asserted that this court had to determine whether there was a suggestive identification and if it presented a substantial likelihood of misidentification.

This court held:

> "A defendant who does not file a motion to suppress an identification, and who fails to contemporaneously object to the admission of the identification testimony at trial, fails to preserve the issue of its admissibility as an error on appeal." *State v. Johnson*, 95-711, pp. 3-4 (La.App. 3 Cir. 12/6/95), 664 So.2d 766, 769, *writ denied*, 96-0082 (La.3/29/96), 670 So.2d 1236. *See also* La.Code Crim.P. arts. 703(F) and 841(A). The record reveals that the defendant did not file a pre-trial motion to suppress the witnesses' identifications or object to its admissibility at trial. Consequently, as the defendant failed to preserve this issue, we do not review it on appeal.

*Id.* at 440.

The State relies on *Boyance* and further contends that while a motion to suppress would not have been possible because of the in-court identification, Defendant did not contemporaneously object to it at trial. Thus, the error was not preserved for review.

In *State v. Brumfield*, 96-2667 (La.10/20/98), 737 So.2d 660, *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999), the defendant contended that the court should not have admitted the testimony of the store manager who survived a shooting because her recollection of the crime and her identification of one of the assailants occurred only after she had been hypnotized by the police. At trial, there was no objection to the testimony or the identification. The supreme court found the defendant waived any claim based on the erroneous admission of this evidence.

Here, we find that Defendant waived review of the issue of improper in-court identification because he failed to contemporaneously object at trial. Further, even if Defendant had not waived his objection, the evidence in the record was sufficient to support the finding that he was the man who shot Perioux.

10

*See also State v. Cyriak*, 10-591 (La.App. 3 Cir. 12/8/10), 52 So.3d 324; *State v. Landry*, 03-1632 (La.App. 4 Cir. 5/19/04), 876 So.2d 146, *writ denied*, 04-1586 (La. 11/15/04), 887 So.2d 474.

The defendant did not file a motion to suppress the identification by Agent Boddie or object to any identification testimony at trial. Thus, the defendant waived review of this assignment of error. However, even if the defendant had not waived review of his claim, the evidence in the record is sufficient to support the finding that the defendant sold crack to Agent Boddie.

> As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. *See State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12.

*State v. Neal*, 00-674, p. 11 (La. 6/29/01), 796 So.2d 649, 658, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002).

Two to four weeks after the transaction, Agent Boddie selected the defendant from a photographic lineup. She additionally made an in-court identification of the defendant as the person who sold her crack on October 9, 2010. Deputy Picou also made an in-court identification of the defendant as the person who sold crack to Agent Boddie. After the transaction, Agent Moore saw the defendant walking out of the Tiki Club. Sergeant Bessard testified that he heard the description given by Agent Boddie, and he saw the defendant walking out of the Tiki Club dressed in the same manner as that described by Agent Boddie. The jury heard this testimony and chose to believe the defendant was the

person who sold crack to Agent Boddie. We will not second guess that credibility determination. Viewing the evidence in the light most favorable to the state, the state negated any possibility of misidentification in this matter.

*Chain of custody of physical evidence*

The defendant contends the evidence regarding the chain of custody of the alleged drugs purchased was sketchy at best. The defendant alleges that Agent Boddie testified the crack shown to her appeared to be the crack she purchased from the defendant. The defendant asserts that Agent Boddie made two drug purchases during the same time, and the three rocks of crack were not packaged. The defendant then asserts there was a major issue with the reasonableness of the jury verdict, as there was a problematic chain of custody and errors in the police report. The defendant notes that Agent Moore did not turn the crack in to the evidence custodian until approximately three weeks after the transaction, and he incorrectly listed the evidence on his report as a homemade pipe containing a green vegetable substance and a rolled cigarette containing a green vegetable substance and wrote the wrong case number on the report. The defendant then lists the following chronological breakdown of the chain of custody:

> **10/9/10** - Undercover Agent Jackie Boddie purchased three rocks of crack cocaine outside the Tiki club in Abbeville, Louisiana. The rock from the transaction that occurred during the middle of the one with orange suspect was allegedly placed in the car door pocket when the orange suspect approached with his two rocks according to Boddie. However, Picou testified that she was sure that Boddie held the rock from the second suspect in her hand until they drove off and then put the rocks from the orange suspect in a brown envelope. Boddie left area, put the rocks of cocaine from defendant into an envelope and gave to Sgt. Moore approximately ten to fifteen minutes later. Boddie admitted that the handwriting on the envelope was not hers. Importantly, neither Boddie or Picou testify as to what happened with the other rock from the second suspect. Sgt. Moore testified that he transferred the envelope with the two rocks of cocaine to an evidence

bag which he sealed and signed and kept separate from other drugs but doesn't say how.

**10/11/10** - Sgt. Moore testified that he actually didn't seal the drugs on the night of the transaction due to working eighteen hour days throughout the weekend but was locked in his office in a "secure place" until sealed two days later and locked in his desk at his office with ten to twelve other evidence items. Sgt. Moore claimed to have only key to the desk used.

**10/29/10** - Almost three weeks later, Sgt. Moore transfers drugs to the Vermilion Parish Sheriff's Office evidence custodian, Sgt. Reed. Sgt. Reed testified that he maintains a vault in his office to hold evidence until used in court or taken to crime lab and that only himself and Lt. Jo Ann Matthieu, chief of detectives, have access to the vault which is an old bank vault with a combination lock.

**11/5/10** - Another week later, Sgt. Reed takes evidence to crime lab where it is signed for by Wynette Haycock, the crime lab evidence custodian.

**11/5/10-12/15/10** - Rocks of alleged crack cocaine analyzed by crime lab. Amanda Hebert testified that she recognized the signature of Ms. Haycock on the evidence envelope and that the evidence would have been held in the crime lab vault until tested.

(Citations to the record omitted.)

In *State v. Todd*, 03-1230 (La.App. 3 Cir. 2/4/04), 866 So.2d 1040, *writ denied*, 04-588 (La. 7/2/04), 877 So.2d 143, the defendant argued the evidence was insufficient to support his conviction for distribution of a controlled dangerous substance because the trial court allowed the admission of drugs and a video tape of the drug transaction even though the chain of custody of the items was not properly established prior to their admission. This court found the defendant did not object to the admission of the drugs or the video tape. Therefore, this court did not address the issue of whether the trial court improperly admitted the items into evidence.

In *State v. Guillory*, 95-383 (La.App. 3 Cir. 1/31/96), 670 So.2d 301, the defendant argued the trial court erred in allowing the introduction of bullets for

several reasons, including his claim that there was a break in the chain of custody. This court found there was no contemporaneous objection to the admission of the bullets; therefore, the issue could not be raised on appeal.

There was no objection by defense counsel when the crack sold to Agent Boddie was admitted into evidence as State's Exhibit Number 1. Therefore, the defendant waived review of this claim. For these reasons, the defendant's first assignment of error lacks merit.

## QUESTIONING DURING *VOIR DIRE*

In his second assignment of error, the defendant contends the trial court erred, as a matter of law, in failing to grant a mistrial or at least give a contemporaneous instruction due to inappropriate questioning by the prosecutor of the prospective jury pool.

> [T]he purpose of *voir dire* is to discover grounds for challenges for cause and to secure information for the intelligent exercise of peremptory challenges. *State v. Stacy*, 96–0221 (La.10/15/96), 680 So.2d 1175, 1178. A party interviewing a prospective juror may not ask a question or pose a hypothetical which would demand a commitment or prejudgment from the juror or which would pry into the juror's opinions about issues to be resolved in the case. *State v. Thibodeaux*, 98–1673 (La.9/8/99), 750 So.2d 916 *State v. Williams*, 230 La. 1059, 89 So.2d 898, 905 (1956). *See also, State v. Square*, 257 La. 743, 244 So.2d 200, 226 (1971), judgment vacated in part, 408 U.S. 938, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1972), mandate conformed to, 263 La. 291, 268 So.2d 229 (1972) ("*Voir dire* examination is designed to test the competence and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial."). However, *voir dire* examination which goes to the determination of the qualifications of prospective jurors by testing their competency and impartiality is proper. *State v. Stacy*, *supra*, 680 So.2d at 1178; *State v. Hall*, 616 So.2d 664, 668 (La.1993). This Court in *State v. St. Amant*, 413 So.2d 1312, 1319 (La.1981) held that "because of the difficulty of the concepts and values which must be understood and applied by each juror in his deliberations, counsel for each side is entitled to an opportunity to assess the personality and comprehension of each prospect as a unique human being before accepting him as a juror or challenging him for cause or peremptorily." *See also State v. Dixon*,

365 So.2d 1310 (La.1978). The proper scope of examination lies within the discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. *State v. Stacy*, *supra*, 680 So.2d at 1178; *State v. Hall*, *supra*, 616 So.2d at 668.

*State v. Tilley*, 99-569, pp. 14-15 (La. 7/6/00), 767 So.2d 6, 19, *cert. denied*, 532 U.S. 959, 121 S.Ct. 1488 (2001).

During *voir dire* in the instant case, the state said the following:

Under the statute, the State is not required to prove, you know, on - - like CSI, you have DNA, fingerprints, video. The statute doesn't say the State has to prove by DNA, fingerprints or video. That statute says the State has to prove the defendant intentionally distributed cocaine. And that's what the State has to prove.

If the State proves all the elements of the crime -- if the State proves all the elements beyond a reasonable doubt, but it's without DNA, fingerprints or video, through eyewitness testimony of officers, how would you vote, Ms. Hebert?

This question was answered by thirteen prospective jurors. The state then asked: "Now, once you hear the witnesses, this is -- you hear the witnesses and if you believe them, would you be able to return a guilty verdict if you believe the state had proved its case?" Defense counsel objected and, in a side bar conference, asked for a contemporaneous instruction because he felt the state gave the wrong instruction regarding what the jury had to do in order to find the defendant guilty. Defense counsel argued the State was misleading the jury into believing it could return a guilty verdict "when they [were] not necessarily finding somebody guilty beyond a reasonable doubt." Defense counsel then asserted a contemporaneous instruction regarding what the law actually was should be given. The state asserted it was asking the prospective jurors if they could follow the law. The trial court informed the state that it could not ask how the prospective jurors would vote given any certain set of facts. The state subsequently argued it was asking the

prospective jurors whether they could convict if the state proved its case beyond a reasonable doubt based on eyewitness testimony. The trial court stated it believed three things the state said were probably impermissible, but an instruction to the jury was not required. The state subsequently asked the trial court if the trial court would permit it to ask the prospective jurors: "Could you convict if the state proves the case beyond a reasonable doubt all the elements based on eyewitness testimony?" Defense counsel objected, arguing the question called for a hypothetical, and asked for a contemporaneous instruction. The trial court stated it would not call the question a hypothetical. Defense counsel then stated it was up to the jurors to evaluate the testimony of each witness. Defense counsel subsequently asked the trial court to instruct the prospective jurors that "they are the judges of the law and of the facts under the law as given by the Court." The trial court denied the request for a contemporaneous instruction. Defense counsel then moved for a mistrial, which was denied. The trial court subsequently stated it would allow the state to ask the prospective jurors if they would convict based on eyewitness testimony, and defense counsel objected.

The defendant contends the state was focused on eyewitness testimony only and trying to get the prospective jurors to commit to vote guilty based solely on such testimony, which was improper, and a mistrial should have been granted.

In *State v. Schouest*, 351 So.2d 462 (La.1977), the prosecutor asked prospective jurors: "After you sit through this trial and after you listen to all of the evidence, and if after that we convince you beyond a reasonable doubt that Nolan Schouest is guilty, would you vote guilty in this case?" The defendant's objection to the question was based upon his contention that the question sought a commitment and a promise from the jurors. The prosecutor argued the question

was a correct statement of the law, which presented a legitimate inquiry into the jurors' qualifications. The prosecutor further argued that he could ascertain, during *voir dire*, whether the prospective jurors would obey their solemn duty under the law to convict when they were convinced beyond a reasonable doubt of the defendant's guilty. The supreme court cited *State v. Young*, 337 So.2d 1196 (La.1976), and found the defendant's claim lacked merit.

In *Young*, the prosecutor, during his closing argument, made reference to a "promise" of the jurors during *voir dire* examination that they would return a verdict of guilty if such a verdict was warranted by the facts. The supreme court held that "mere use of the word 'promise' by the prosecutor in reminding the jury of its sworn duty was not prejudicial to the accused." *Id.* at 1200.

As in *Schouest*, 351 So.2d 462, we find that the state's questions were not prohibited but were an attempt by the state to determine whether the prospective jurors could follow jurisprudence that a positive identification by a single witness is sufficient to support a conviction. It was an attempt to determine if the prospective jurors could follow the law. For these reasons, we find this assignment of error lacks merit.

### USE OF STOPWATCH DEMONSTRATION

In his third assignment of error, the defendant contends the trial court erred, as a matter of law, in allowing the state to use a stopwatch demonstration during its rebuttal closing argument.

During its rebuttal closing argument, the state noted that identity was an issue in the instant case and stated that Agent Boddie testified the defendant was a foot from her for fifteen to twenty seconds. The state then said it had a stopwatch which it was starting. Defense counsel objected and told the trial court the state

17

was "not to demonstrate," the demonstration was to be done with a witness, not in argument. The trial court stated it did not think the "stopwatch issue" was objectionable. The trial court subsequently stated: "I think we can do it."

Louisiana Code of Criminal Procedure Article 774 provides, in pertinent part: "The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."

In *State v. Hendricks*, 38,945 (La.App. 2 Cir. 9/22/04), 882 So.2d 1212, *writ denied*, 04-2833 (La. 3/18/05), 896 So.2d 1000, the defendant argued the state improperly introduced new evidence during closing argument in violation of La.Code Crim.P. art. 774. The defendant argued that the state's use of a clock to demonstrate the passage of one minute, the state's theory of the estimated time period necessary for death by strangulation, constituted the improper introduction of demonstrative evidence during its closing argument.

The second circuit found the state's use of a clock to display the lapse of one minute was not new evidence, as the defense cross-examined an expert witness with regard to whether death by strangulation could result in one minute or less, and the coroner responded that it was possible. A review of the record revealed that the state incorporated the issue into its closing argument, adding its description of the victim's death during the passing minute. Thus, the state's use of the clock to illustrate the lapse of one minute was within the scope of the evidence previously admitted during the trial.

Agent Boddie testified that her initial interaction with the defendant lasted from fifteen to twenty seconds, and her ability to identify the defendant was at issue at trial. We agree with the second circuit ruling in *Hendricks*. The state's

18

use of the stopwatch was not improper. Accordingly, the defendant's third assignment of error lacks merit.

## STATEMENTS DURING REBUTTAL CLOSING ARGUMENTS

In his fourth assignment of error, the defendant contends the trial court erred, as a matter of law, in failing to grant a mistrial after the prosecutor made inappropriate statements during its rebuttal closing argument. In his fifth assignment of error, the defendant contends the trial court erred, as a matter of law, in failing to instruct the jury to disregard inappropriate statements made by the state during its rebuttal closing argument.

> LSA-C.Cr.P. art. 774 requires that closing arguments at trial be confined "to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." *State v. Smallwood*, 09-86, p. 15 (La.App. 5 Cir. 7/28/09), 20 So.3d 479, 489; *State v. Robertson*, 08-297, p. 12 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659, *writ denied*, 08-2962 (La.10/9/09), 18 So.3d 1279. Closing arguments shall not appeal to prejudice. *Robertson*, 08-297 at 12, 995 So.2d at 659 (citing LSA-C.Cr.P. art. 774). A prosecutor has considerable latitude in making closing arguments. *State v. Jackson*, 04-293, p. 5 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, *writ denied*, 05-0232 (La.5/6/05), 901 So.2d 1094. However, prosecutors may not resort to personal experience or turn their arguments into a plebiscite on crime. *Robertson*, 08-297 at 12-13, 995 So.2d at 659-60 (citing *State v. Williams*, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716, *cert. denied*, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998)).

> The trial judge has broad discretion in controlling the scope of closing arguments. *Robertson*, 08-297 at 13, 995 So.2d at 660 (citing *State v. Taylor*, 07-93, p. 31 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 103, *writ denied*, 07-2454 (La.5/9/08), 980 So.2d 688). A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. *Id.* (citing *Jackson*, 04-293 at 5-6, 880 So.2d 69 at 73). In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence. *Id.*

LSA-C.Cr.P. arts. 770 and 771 govern improper comments made during closing arguments and authorize the trial court to correct a prosecutor's prejudicial remarks by ordering a mistrial or admonishing the jury, at the defendant's request. *Smallwood*, 09-86 at 16, 20 So.3d at 489-90. LSA-C.Cr.P. art. 770 provides:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> (3) The failure of the defendant to testify in his own defense; or
>
> (4) The refusal of the judge to direct a verdict.

LSA-C.Cr.P. art. 771 provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

20

> A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. *Smallwood*, 09-86 at 16-17, 20 So.3d at 490 (citing *State v. Lagarde*, 07-123, pp. 10-11 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, *writ denied*, 07-1650 (La.5/9/08), 980 So.2d 684). Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. *Id.* In addition, assuming the prosecutor's argument was improper, reversal is not required when such error was limited and did not show significant impact on the outcome of the case. *State v. Huckabay*, 00-1082, p. 29 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1110, *writ denied*, 02-0703 (La.11/1/02), 828 So.2d 564; *State v. Francis*, 95-194, pp. 12-14 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 604.

*State v. Foster*, 09-837, pp. 13-15 (La.App. 5 Cir. 6/29/10), 44 So.3d 733, 741-43, *writ denied*, 01-1775 (La. 4/25/11), 62 So.3d 84.

In the instant case, the state made the following comments during its rebuttal closing argument:

> These officers here, in the courtroom and the ones testifying, you know, they risk their lives everyday [sic] for us. They go undercover in doing roles. They're not going to make up something, okay. They're not going to make up something. They do their duty and when they see a crime committed, they have to act on it. That's what was done in this case.
>
> The defendant does not get rewarded because he did not commit a crime on video because that's not the law in Louisiana. That's not what the statute says. Most of you own your own homes and drugs in areas cause property values to drop.

Defense counsel objected at that time, and the objection was sustained. The state subsequently commented: "Ladies and gentlemen, hold him accountable. Bring back a verdict truth dictates and justice demands. Protect neighborhoods and find him guilty." Defense counsel then moved for a mistrial, arguing that his prior objection was sustained and that the state's argument regarding protecting neighborhoods was prosecutorial misconduct. The trial court found the state's

21

comments were improper but would not declare a mistrial, choosing instead to instruct the jury to disregard the state's comments.

The trial court subsequently made the following remarks to the jury:

> Ladies and gentlemen, the last remarks made by Mr. Hardee, the Assistant DA, about home values in high crime neighborhoods is to be disregarded by you, please. That is not the proper subject of any kind of argument in a criminal case. So please put it out of your mind. Can all of you do that?

In its final instructions to the jury, the trial court stated: "You must consider only evidence which was admitted during trial. You may not consider evidence which you were instructed to disregard or to which an objection was sustained." The trial court further instructed the jury as follows:

> The statements and arguments made by the attorneys are not evidence. In the opening statements, the attorneys were permitted to tell you the facts they expected to be proven. In closing arguments, the attorneys were permitted to present for your consideration their contentions regarding what the evidence has shown or not shown and what conclusions they think may be drawn from the evidence.
>
> The opening statements and the closing statements are not to be considered as evidence.
>
> As jurors, you are not to be influenced by sympathy, passion, prejudice or public opinion. You are expected to reach a just verdict.

The defendant contends the state's remarks were clearly an overt reference to the consequences to society should he be acquitted. The defendant further contends that a mistrial was warranted in the instant matter particularly when one considers the questionable nature of the identification of him, the errors in the police report, and the problematic chain of custody. In support of his argument, the defendant cites *State v. Kaufman*, 304 So.2d 300 (La.1974), and *State v. Jackson*, 568 So.2d 599 (La.App. 4 Cir. 1990).

22

During closing arguments in *Kaufman*, 304 So.2d at 307 (emphasis added), the prosecutor stated:

> Gentlemen, my argument, when I speak in a personal way, my argument is based on the evidence, and believe me, that's right, I personally feel from the evidence that I have a case; *otherwise, I wouldn't be here, because it's within my power to be here or not be here*.

The supreme court found the prosecutor's argument went beyond the permissible bounds, was an attack on the presumption of innocence afforded all accused before the courts, and emphasized the function of the prosecutor as an officer of government and tended to exploit it. The supreme court found, taking into consideration the other prejudicial errors in the matter, the improper and prejudicial argument was an additional reason for reversal. The instant case is distinguishable from *Kaufman*, as there were no improper comments regarding the presumption of innocence.

In *Jackson*, 568 So.2d at 603, the defendant complained about the following remarks made by the prosecutor during rebuttal closing argument:

> Or how Officer Landry has cast that constitution to the wind. [Defense counsel] urges you to send a message, suggest that you send a message to the police department and to [the District Attorney] that this is not–you won't–you won't stand for this. I urge you to send another kind of message. *I urge you to send a message to Mr. Jackson [sic] we won't have this anymore in our neighborhoods. We won't have this anymore right down the street from here, that's the kind of message that I am urging you to send. . . .*

The prosecutor also stated: "'[Defense counsel] wants you to feel sorry for Melvin Jackson because he's in an O.P.P. uniform. *I say direct your sympathies to Paul Landry who was in no uniform of any kind protecting the people of this city from people like Melvin Jackson.*'" *Id.* The prosecutor further stated:

> *Direct your sympathies to the people [defendant] could have sold that dosage unit [of heroin] to and direct your sympathies to*

23

*Paul Landry* for what he went through for those six months. The man sold heroin in the city of New Orleans. [Defense counsel] wants you to send a message. *I would suggest you send the message to Melvin Jackson no more heroin on the streets of New Orleans*, not by you. You are guilty, you are guilty as charged. You distributed heroin in the city of New Orleans, do not do it again, you will not do it again. I ask you to return a verdict of guilty as charged.

*Id.* (All emphases in original). The supreme court found the societal statements were directed to sending a message specifically to the defendant by convicting him, and there was no overt reference to the consequences to society should the defendant be acquitted. Moreover, the supreme court was not thoroughly convinced that the statements by the prosecutor influenced the jury or contributed to the verdict. The defendant asserts *Jackson* is distinguishable from the instant case in that the prosecutor in the instant case clearly made an overt reference to the consequences to society should he be acquitted.

In *State v. Messer*, 408 So.2d 1354, 1356 (La.1982), the prosecutor, during rebuttal argument, stated: "Lets [sic] send that message loud and clear that the Parish of St. Martin is not going to have those kind of people in this parish." The supreme court found the remarks amounted to a "community call to arms," which was clearly improper and designed to personalize crimes for the jury and make it appear that the defendant's gunshots at troopers were somehow directed at the parish as a whole. However, the supreme court concluded the error did not require reversal in view of the substantial evidence of the defendant's guilt.

In *State v. Francis*, 95-194, p. 13 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 604, the prosecutor stated the following:

Maybe five years from now somebody else will have jury duty and you'll tell them, "Yeah, I served on jury duty, and I did the right thing. I helped protect our Parish. I supported our Police Officers in their-in their efforts to stop crime. And I came back guilty as charged with a man who had a gun when he know [sic] he wasn't supposed to have a

> gun." And you'll feel good about it, because it's the only thing that you can do and live up to your oath as a-as a juror. Please do the right thing. Send out a message. He wants you to send a message. You send a message. Send a message to her and to her follow officers that we support you, and we support your efforts, not the efforts of robbers, not the efforts of liars.
>
> I know there's been a lot of talk that you don't live in there, but little kids do. You make that area safe for them.

The fifth circuit found that, even assuming the prosecutor's comments were improper, it was not an error that would require reversal.

In *State v. Toups*, 00-1944, p. 10 (La.App. 4 Cir. 10/8/03), 859 So.2d 768, 775, the state made the following remarks during rebuttal: "You know, maybe you want to cut her a break. Maybe you want to just cut her a break. I ask that [sic] don't cut her a break by finding her not guilty. You'd be doing a disservice to the community." The trial court sustained defense counsel's objection to the state's comments but refused to grant a mistrial. The fourth circuit found the trial court did not abuse its discretion in implicitly determining that the state's plea to the jury did not make it impossible for defendant to obtain a fair trial. Thus, a mistrial was not warranted.

In *Foster*, 44 So.3d at 743, the state made the following remarks during closing argument:

> You know what? You're the collective voice of the community. You're the jurors. You're representing the people of Jefferson Parish. And you saw the amount of dope in this case, cocaine and marijuana. You've heard the elements. You've heard the testimony. Everybody agreed that drugs are terrible. They cause a lot of problems. Everybody heard it.

The fifth circuit found that, although arguably improper, the state's comments fell within the purview of La.Code Crim.P. art. 771. The fifth circuit noted that an admonishment had been given and that the defendant received an adequate remedy

25

under Article 771, as the trial court instructed the jury not to be influenced by sympathy, passion, prejudice, or public opinion. The fifth circuit further found a mistrial was not warranted, as there was no indication the state's comments so inflamed the jury that they influenced the jury. Additionally, the fifth circuit noted there was ample evidence of the defendant's guilt.

The objectionable comments in the instant case do not refer directly or indirectly to race, religion, color, or national origin; another crime committed or alleged to have been committed by the defendant; the failure of the defendant to testify in his own defense; or the refusal of the judge to direct a verdict. Instead, the state's remarks fall within the ambit of La.Code Crim.P. art. 771. Thus, an admonishment was called for unless an admonishment was not sufficient to assure the defendant a fair trial.

In light of the trial court's admonition and instruction to the jury that it was not to be influenced by sympathy, passion, prejudice, or public opinion, a mistrial was not warranted, and the admonishment was an adequate remedy. Accordingly, assignment of error number four lacks merit.

Because the trial court instructed the jury to disregard the inappropriate statements made by the state during its rebuttal argument, the defendant's claim that the trial court failed to admonish the jury is incorrect. Accordingly, assignment of error number five lacks merit.

## REQUEST FOR A BENCH TRIAL

In his sixth assignment of error, the defendant contends the trial court erred, as a matter of law, in denying his request for a judge trial.

In his motion for post verdict judgment of acquittal, the defendant alleged he requested a bench trial on July 16, 2012, and his request was denied by the trial

26

court.  The state also referenced the defendant's request in its memorandum in opposition to the defendant's motion for post verdict judgment of acquittal.  The matter was addressed by the parties at the hearing on the defendant's motion.  Because the request for a bench trial was not referenced in the minutes of court or the transcript of the defendant's trial, appellate counsel requested that the record be supplemented and that both parties be allowed to file a supplemental brief to address the issue.

This court received a supplemental record on May 29, 2013.  Therein, court reporter Debra Hebert signed an affidavit in which she asserted she was unable to provide a transcript of a hearing in which the defendant requested a bench trial and/or waived his right to a jury trial, as she had reviewed all of her notes and audio recordings of proceedings on July 16, 2012, and could find no reference to said request.

Counsel for the state and the defendant were notified via letter dated May 29, 2013, that a supplemental record had been lodged with this court.  To date, no supplemental briefs have been filed by the parties.  Thus, nothing has been presented in this assignment of error for this court to review, and this assignment of error is considered waived.

## INNEFECTIVE ASSISTANCE OF COUNSEL

In his only *pro se* assignment of error, the defendant contends he was denied effective assistance of counsel when defense counsel failed to file pre-trial motions to suppress identification and evidence.

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter.  *State v. Burkhalter*, 428 So.2d 449 (La.1983).  However, where the record contains sufficient evidence to decide the issue, and the issue is raised

by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701.

In his *pro se* brief, the defendant alleges the following: 1) defense counsel did not represent him in a professional manner, as counsel visited him a week and a half before trial; 2) defense counsel never told him or asked him anything about a trial; 3) defense counsel never informed him he had to request a bench trial more than forty-five days prior to trial; 4) the trial court failed to afford an adequate remedy when considering the motion for post verdict judgment of acquittal; therefore, when the defendant obtains relief he should proceed in front of a different judge; 5) defense counsel failed to perform proper pre-trial discovery and investigation, and interview and call witnesses; 6) defense counsel's failure to suppress the identification and evidence precluded the defendant from presenting facts, evidence, and witnesses which would have proven his innocence; 7) defense counsel failed to prepare a defense dealing with the chain of custody; and 8) defense counsel failed to prepare an alibi defense. The defendant contends that defense counsel's representation was not only deficient but indicated a constructive denial of counsel. The defendant further contends he was prejudiced because the outcome of his trial could have been different had defense counsel's performance not been deficient.

The defendant's allegations of ineffective assistance of counsel involve matters of trial preparation or strategy. Decisions relating to investigation, preparation, and strategy require an evidentiary hearing and cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the

defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated. Accordingly, the defendant's claims of ineffective assistance of counsel will be relegated to post-conviction relief.

The defendant's claim that the trial court failed to afford an adequate remedy when considering the motion for post verdict judgment of acquittal is considered abandoned, as he did not provide specific references to the record regarding his complaint. *See State v. Lewis*, 09-846 (La.App. 3 Cir. 4/7/10), 33 So.3d 1046, *writ denied*, 10-967 (La. 11/24/10), 50 So.3d 825; Uniform Rules—Courts of Appeal, Rule 2-12.4.

## CONCLUSION

The defendant's conviction is affirmed. The trial court is directed to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice.

**CONVICTION AFFIRMED. REMANDED WITH INSTRUCTIONS.**