680 So.2d 1175 (1996)
STATE of Louisiana
v.
Gary STACY.
No. 96-K-0221.
Supreme Court of Louisiana.
October 15, 1996.
*1176 Richard P. Ieyoub, Attorney General, Paul Carmouche, District Attorney, Hugo A. Holland, Jr., and Catherine Estopinal, Shreveport, for Applicant.
Allen Ray Harris and Pamela G. Smart, for Respondent.
MARCUS, Justice.[1]
Gary Stacy was indicted by the grand jury in two separate counts for the second degree murders of Kenneth Loston and Latson Williams in violation of La. R.S. 14:30.1(A)(1) and 14.30.1(A)(2). After trial by jury, defendant was found guilty of manslaughter on both counts and sentenced to serve ten years at hard labor on each count with sentences to run consecutively. The court of appeal reversed the convictions and sentences and remanded the case for a new trial finding that the trial judge erred in restricting the scope of the defendant's voir dire examination.[2] Upon the state's application, we granted certiorari to review the correctness of this decision.[3]

FACTS
A double homicide occurred in Shreveport in the early evening of September 28, 1991. The previous evening defendant, Gary Stacy, and three companions, Donny Gilliard, Jr., Wesley Thomas and Michael Birklett, drove from their hometown of Houston, Texas, to Shreveport in a van Gilliard, the driver, had borrowed from his uncle. The next day, they brought the van for repairs to Professional Automotive where an uncle of Gilliard's worked, and they stayed at the shop awaiting completion of the work. Later that afternoon, Kenneth Loston and Latson Williams, the victims, drove up, spoke for a few moments with Thomas and left. Shortly thereafter, at Thomas' request, Gilliard drove defendant and his companions to the parking lot of Caddo Career Center where Loston and Williams were waiting in their vehicle.
In the early evening, the Shreveport police responded to a suspicious activity call at the Caddo Career Center and found Loston and Williams shot to death in their vehicle. The police interviewed numerous witnesses near the scene who saw a van which matched the description of the one driven by Gilliard parked near the victims' vehicle in the parking. *1177 lot, heard shots, and saw the van speeding away. Later that evening, defendant and his companions were seen at a local cafe counting money in the bathroom. Defendant and his companions left town the same evening and returned to Houston.
Defendant and Thomas were arrested in an apartment complex in Houston. The officers found defendant in a bedroom pretending to be sleeping with a .357 caliber pistol and a .22 caliber pistol in close proximity. A 9 mm Mac-11 was lying on a canvas bag in the bedroom closet. Gilliard turned himself in to the officers. Defendant and Thomas were extradited to Shreveport. Defendant was sixteen years old at the time of his arrest.
Gilliard, a state witness, testified at defendant's trial that Thomas told him to drive the van to the Caddo Career Center because he was going to rob Loston and Williams. Thomas, who was in the passenger seat, and Birklett and defendant, who were in the back seat of the van, jumped out and approached the victims' vehicle. According to Gilliard, all three were armed (defendant with a .357 magnum). Defendant and Birklett fired into the driver's side of the vehicle and Thomas fired into the passenger side. All three then got back into the van and Gilliard drove away. Defendant testified at the trial of Wesley Thomas that he stepped out of the van momentarily to see what was going on and then jumped back in. He had no knowledge of a plan to rob the victims nor did he know why the victims were shot.
Based on the evidence, including live rounds and spent cartridges found near the victims' vehicle and a projectile found in the vehicle, the state's expert witnesses identified three different weapons and were of the opinion that there were three different shooters, two on the driver's side and one on the passenger's side. However, they could not rule out the possibility of one shooter with two guns on the driver's side of the vehicle, but would find the situation unlikely to have occurred. The defendant's expert concluded that there could have been one to four shooters but he was certain that there were three weapons. The 9 mm Mac-11 weapon found in the bedroom where defendant was arrested was the only weapon confirmed by the experts to have been used in the shootings.

VOIR DIRE EXAMINATION
Defendant contends he was denied his constitutional right to the full scope of voir dire examination when the trial judge refused to allow defense counsel to read the definition of the crime of accessory after the fact to prospective jurors.
During voir dire, the prosecutor explained that defendant had been charged as a principal to the crime of second degree murder committed during an armed robbery. He then presented definitions of second degree murder, armed robbery and principal and questioned the jurors as to whether they understood when a person was a principal to a crime. When defense counsel attempted to define accessory after the fact by reading La. R.S. 14:25 to the prospective jurors, the trial judge, sua sponte, stopped the proceedings, removed the jurors from the courtroom, and held a conference on the matter. Defense counsel argued that there may be evidence presented in the case that defendant is guilty of being an accessory after the fact, and in order to exercise an intelligent peremptory challenge, counsel needed to know whether the jurors understood the difference in participation as a principal from that of accessory after the fact. The prosecutor argued that reading the definitions of principal, second degree murder and armed robbery was proper, but the definition of accessory after the fact should not be read to the jurors because defendant had not been charged with that crime and it is not a responsive verdict to second degree murder, the crime charged. The trial judge in refusing to allow the inclusion of the definition of accessory after the fact reasoned:
Well, to begin with, accessory after the fact has notis a crime and has not been charged in this offense. I havecertainly counsel is able to say that what happened after the killing, alone, cannot convict this defendant of being a principal for the offenses charged, and he may argue that. Evenhowever, even if the man is a principal, what happened after the offense may well be admiss[i]ble in proving of the other *1178 offense, I mean, of the offense itself. So I have no objection to counsel arguing that if someone does things after the offense, then he may notthat alone wouldn't make him guilty. What counts is what happened before the offense or during the offense.
Now, I don't see any sense inhe may argue that. But so far as reading the definition of accessory after the fact, I don't see that. Those things, everything that goes to either guilt or innocence of the crimes charged, is admiss[i]ble. But whether there's a separate charge or definition of accessory after the fact will do nothing but confuse the jury. And the reading of that definition is not to be allowed. But as I say, anything else that goes to the guilt or innocence is.
You may introduce the same facts, make the argument that what happens after the fact is notdoesn't prove that he's a principal. It's what happens before and during the offense is the only thing that would go toward proving guilt of this defendant. And I have no objection at the time the jury is instructed to fashioning a special charge which will point that situation up to the jury. But it will not use the definition of accessory after the fact. It may say principally the same thing, but it's not going to include that. All right.
Defense counsel objected to the court's ruling but made no further attempt to question the jurors about this theory of defense during the remainder of a lengthy voir dire. However, during his opening statement, defense counsel stated that the evidence would show "that Gary Stacy is guilty of being an accessory after the fact, that he's not a principal, that he's not a shooter." During closing argument, defense counsel again stated that the "evidence only shows that the only crime that Gary Stacy was proven guilty of was being an accessory after the fact" and proceeded to define accessory after the fact. The trial judge charged the jury with the definition of accessory after the fact.
In State v. Hall, 616 So.2d 664, 668-669 (La.1993), this court stated the law applicable to the scope of voir dire examination:
La. Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La. Code Crim. P. art. 786 further provides that the court, the state and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion.
We find, for the reasons set forth below, that the trial judge did not abuse his discretion when he refused to allow defense counsel to read the definition of accessory after the fact to prospective jurors. Defendant was charged as a principal to the crime of second degree murder committed during an armed robbery. The only responsive verdicts to second degree murder are guilty, guilty of manslaughter and not guilty. Accessory after the fact is a separate and distinct crime. While the definition of principal is relevant to the crime charged, that of accessory after the fact is not. The trial judge thought that it would be confusing to the jury to read the definition of a crime not charged. However, the trial judge made it clear that he would not prohibit defense counsel from exploring his defense theory during the remainder of voir dire or at any other time during the trial. Defense counsel, for whatever reasons, chose not to pursue this line of questioning during voir dire. He was afforded wide latitude to freely explore the jurors' personal backgrounds and potential prejudices as well as their understanding of responsive verdicts such as manslaughter and of any fundamental principles applicable to the case. Defense counsel was allowed to pursue his theory that defendant was an accessory after the fact during his opening statement. He was not precluded from offering evidence during trial to support this *1179 defense. Defense counsel pursued his theory again in closing argument. Finally, the trial judge charged the jury with the crime of accessory after the fact. Under the circumstances, we do not see how defendant could have been prejudiced by the trial judge's refusal to allow defense counsel to read the definition of the crime of accessory after the fact to prospective jurors. Clearly, the trial judge did not abuse his discretion. Refusal of the trial judge to permit the reading of the definition of accessory after the fact during voir dire was not error in this case. The court of appeal erred in finding otherwise. We must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The case is remanded to the court of appeal to consider those assignments of error not previously reviewed by it, reserving to defendant the right to apply to this court to review all assignments of error, including those addressed by the court of appeal in its previous opinion.
NOTES
[1] Kimball, J. not on panel. Rule IV, Part 2, § 3.
[2] 27-136 (La.App.2d Cir. 10/5/95), original opinion adopted and reinstated, 27-136 (La.App.2d Cir. 12/22/95), 665 So.2d 390.
[3] 96-0221 (La.5/3/96), 672 So.2d 700.