782 So.2d 1087 (2001)
STATE of Louisiana,
v.
Michael D. FISH.
No. 00-KA-922.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
*1088 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Attorney for Appellant Michael D. Fish.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Counsel of Record on Appeal.
Terry M. Boudreaux, Assistant District Attorneys, Appellate Counsel, Quintin P. Kelly, Assistant District Attorney, Trial Counsel, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges GOTHARD, CANNELLA and McMANUS.
JAMES L. CANNELLA, Judge.
Defendant, Michael Fish, appeals from his convictions of aggravated criminal damage to property valued at less than $500 and purse snatching, and his sentence to 5 years imprisonment at hard labor, and enhanced as a second felony offender to 20 years imprisonment at hard labor, respectively. For the reasons which follow, we affirm the convictions, the initial sentences, the finding of habitual offender and vacate the enhanced sentence and remand.
On February 6, 1999, Constance Ruppert (Ruppert) left the Winn Dixie grocery on Lapalco Boulevard and walked to her automobile with a shopping cart containing groceries which she had just purchased. Her purse was in the childseat of the shopping cart. She was unloading the groceries into her automobile, when someone ran up, snatched her purse out of her shopping cart and began running through the parking lot. She screamed and chased the perpetrator. He ran from the parking lot toward Lapalco Boulevard where a maroon truck with a camper slowed down, then stopped, and picked him up. John Conway (Conway), driving in the parking lot of the Winn Dixie grocery at the time of the incident, saw the man fleeing the scene and chased him. Conway continued to follow the man after he jumped into the truck, while telephoning his location to the 911 emergency operator. He could not report a license plate number because the license plate was covered with a blue cloth. While he was following, the man started shooting a flare gun at his vehicle, causing *1089 $400 in damage. Officers in the area picked up the pursuit. They eventually cornered the truck in a parking lot and arrested two men. One man, who fit the description of the purse snatcher, was identified as Thien Do (Do). The driver of the truck was identified as the Defendant. Ruppert identified Do as the person who took her purse, which was found in the truck.
On February 18, 1999, the Defendant and Do were charged by bill of information with aggravated criminal damage to property valued under $500 and purse snatching. Do pled guilty as charged. The Defendant proceeded to trial alone. At trial, the Defendant's defense was that he was only an accessory after the fact and not, as argued by the State, a principal. The Defendant called Do as a witness, who testified that he did not tell him that he was going to snatch a purse before he did it. However, on cross examination, the State established that Do rode to the grocery from Lafitte with the Defendant. Do stated that the Defendant was supposed to be buying groceries for his ex-wife, but he did not purchase any. Do had stated in his initial statement to the police, given at the time of the incident, that he snatched the purse to get money for food and gas. The State produced evidence that the gas gage in the truck was on empty. Do had no money and the Defendant only had $2.52 when they were arrested. Further, the Defendant circled around to pick up Do as he fled with the purse and continued to drive in an attempt to allude capture while Do was firing the flare gun at Conway. On September 21, 1999, a six-person jury unanimously found the Defendant guilty as charged on both charges. The Defendant was subsequently sentenced to 5 years imprisonment at hard labor on each count, to be served consecutively.
The State filed a habitual offender bill of information against the Defendant, alleging that he was a second felony offender, based on a prior guilty plea conviction for possession of cocaine. The Defendant denied the allegations of the bill. Following a hearing on November 18, 1999, the trial court found the Defendant to be a second felony offender. The trial court vacated the Defendant's original sentence and sentenced him to 20 years imprisonment at hard labor. The Defendant timely appealed, assigning only one error and requesting that this court review the record for errors patent.

ASSIGNMENT OF ERROR NUMBER ONE
The Defendant's assigned error actually alleges two different but related trial court errors for appellate review. He argues that the trial court erred in limiting his right to a full voir dire by prohibiting him from reading the definition of accessory after the fact during voir dire. Also, he asserts that the trial court erred in refusing his request to charge the jury with the law regarding accessory after the fact.
The State relies on the Louisiana Supreme Court case of State v. Stacy, 96-0221 (La.10/15/96), 680 So.2d 1175, in support of its position that there was no trial court error in either respect because the Defendant was allowed to discuss accessory after the fact in his opening statement, present evidence for his defense during trial and read the statute during his closing argument. The State acknowledges that there is a difference between the two cases in that in Stacy, the court charged the jury on the law of accessory after the fact, where in this case the trial court refused to give such a charge. But, the State argues that it is not a significant distinction.
The law applicable to the scope of voir dire examination was set out in State v. Stacy, supra, as follows:

*1090 La. Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La.Code Crim. P. art. 786 further provides that the court, the state and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. (Citations omitted.)
In Stacy, factually similar in some respects, the Supreme Court determined that the refusal of the trial court to allow the reading of the definition of accessory after the fact during voir dire was not error. In Stacy, the defendant was charged as a principal to second degree murder. The defendant's defense was that he was an accessory after the fact. However, the trial court, because it would confuse the jury, prevented defense counsel from defining accessory after the fact during voir dire, even though the prosecutor had defined principal.
In finding no abuse of the trial court's discretion in preventing defense counsel from defining accessory after the fact during voir dire, the Louisiana Supreme Court noted that accessory after the fact was a separate and distinct crime and was not a responsive verdict to second degree murder. The trial court had found that it would be confusing to the jurors to read to them the definition of an offense with which the defendant was not charged. The Supreme Court further noted that defense counsel was allowed to explore his defense theory of accessory after the fact during the remaining voir dire despite the fact he did not do so.
Applying the rationale of Stacy to the case before us, we find that the trial judge herein did not abuse his discretion when he refused to allow defense counsel to read the definition of accessory after the fact to prospective jurors. It was not an offense with which the Defendant was charged. The trial court thought that allowing defense counsel to read the definition of the offense to the jury might be confusing. Defense counsel was permitted to otherwise explore the jurors' personal backgrounds and potential prejudices. Additionally, the trial court did not prevent defense counsel from questioning the prospective jurors about their attitudes toward persons who help a perpetrator escape following the commission of an offense, an element of the offense of accessory after the fact.
As stated in Stacy, the purpose of voir dire examination is to determine the qualifications of prospective jurors and to discover bases for challenges, either for cause or peremptory. The scope of voir dire is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse. We find no such abuse of discretion in this case, where the trial court refused to allow defense counsel to read the definition of accessory after the fact, but did allow questioning of the prospective jurors on all issues in the case, in accord with the purpose of voir dire examination.
Moreover, as in Stacy, the trial court allowed defense counsel to argue accessory after the fact in his opening statement, during trial and in his closing argument. *1091 Thus, even though defense counsel was not permitted to read the definition of accessory after the fact to the prospective jurors during voir dire, he was able to present the defense of accessory after the fact during trial. Thus, we find no reversible error in this part of the Defendant's assigned error.
Next, the Defendant argues that the trial court erred in refusing to charge the jury on the law of accessory after the fact. The State argues that the trial court gave a complete and accurate charge of the law on all aspects of the offenses with which the Defendant was charged. Accessory after the fact is a separate offense with which the Defendant was not charged and which is not a responsive verdict to the charged offenses. Therefore, the State asserts that the trial court correctly declined to charge the jury on an offense with which the Defendant was not charged. Moreover, the State argues that the Defendant suffered no prejudice from the trial court's action because the trial court permitted the defense to argue accessory after the fact in its opening statement, to present evidence to support it during trial and to argue and present the definition to the jury during closing argument. Thus, the State argues that there is no reversible error in this case based on the charges presented to the jury.
La.C.Cr.P. art. 807, on special jury charges, provides in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The failure to read a requested special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. State v. Patterson, 99-994 (La. App. 5th Cir.1/25/00), 752 So.2d 280.
This Court recently considered a similar issue in State v. Davis, 00-278 (La.App. 5th Cir.8/29/00), 768 So.2d 201[1], wherein we held that it was not reversible error when the trial court failed to give a requested special jury charge where defense counsel was allowed to bring the matter to the jury's attention in closing argument. In Davis, the defendant was charged with possession with intent to distribute cocaine. His defense was that he was merely present where the cocaine was found. As such, he requested a special jury instruction that mere presence is insufficient to prove possession. His request was denied, but he was allowed to make the statement during his closing argument. This Court reasoned that because the defendant was able to present his argument about mere presence to the jury, there was no showing that he was prejudiced by the failure of the trial court to give the requested special jury charge.
In this case, defense counsel was able to fully argue in his opening statement and closing argument that the Defendant was an accessory after the fact. In addition, the Defendant was able to read the definition of accessory after the fact in his closing argument. The offense of accessory after the fact is not a responsive verdict to either of the two offenses with which the Defendant was charged. Complete and accurate charges and responsive verdicts were given on the charged offenses. If the jury did not find that the evidence presented *1092 was sufficient to prove the elements of the charged offenses or responsive verdicts, then they could have voted to acquit the Defendant. However, the jury voted to convict after hearing the evidence presented, including that Do rode to the store with the Defendant, neither man had any money, the gas gauge of the truck they were in was on empty, a blue rag was covering the licence plate, the Defendant claimed that he went to the store to get some items for his ex-wife, no groceries were purchased, Do admitted in his statement that he stole the purse to get money for gas and the Defendant circled around and picked up Do as he was running away with the purse and continued to drive in an attempt to allude capture while Do fired the flare gun at Conway. Based on the foregoing, we do not find that substantial rights of the Defendant were prejudiced by the failure of the trial court to give the specially requested jury instruction pertaining to accessory after the fact. This assignment of error has no merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
Upon reviewing the record, we have found several patent errors in the habitual offender proceeding, one of which requires us to vacate the sentence and remand for resentencing.
In sentencing the Defendant, following a determination that he was a second felony offender, the trial court stated, "your previous sentence is vacated" without any specification regarding to which count he was referring. The trial judge then imposed the enhanced sentence. Only one count of a multi-count indictment/information can be used to enhance the penalty pursuant to La. R.S. 15:529.1 when the convictions were entered on the same day. State v. Brown, 95-124 (La.App. 5 Cir.5/30/95), 656 So.2d 1070; State v. McIntyre, 496 So.2d 1204, 1207 (La.App. 5th Cir.1986). Although it appears that the trial court meant to impose the enhanced sentence on the purse snatching count, since that was the count referred to in the habitual offender bill of information, the indefinite reference to "your sentence is vacated" makes that assumption uncertain and the Defendant's sentence on the remaining count indeterminate. It is required that a defendant receive a determinate sentence for each offense upon which he is convicted. La.C.Cr.P. art. 879; State v. Sheridan, 98-205 (La.App. 5th Cir.10/14/98), 721 So.2d 58. Therefore, the Defendant's enhanced sentence must be vacated and the case remanded for resentencing.
Because of our finding that the sentence must be vacated, the other errors in the sentencing, failure to give the proper prescriptive advice as required by La.C.Cr.P. art. 930.8, failure to impose the sentence without benefit of probation or suspension of sentence, failure to articulate whether the sentences are still to be served concurrent or consecutive, failure to give credit for time served, and errors in the commitment referring to the wrong dates of the convictions and that they were by guilty plea rather than trial, are rendered moot. However, we note them in order to have them corrected on remand in the event of re-sentencing.
For the foregoing reasons, the Defendant's convictions for aggravated criminal damage to property valued at less than $500 and purse snatching, the original sentences and the finding of second felony offender are affirmed, the enhanced sentence is vacated and the case is remanded to the trial court.
*1093 AFFIRMED IN PART; VACATED IN PART AND REMANDED.
NOTES
[1] Writs were taken to the Louisiana Supreme Court on September 29, 2000. However, as of this writing, no decision has been rendered.