**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**20-155**

**STATE OF LOUISIANA**

**VERSUS**

**CODY NICHOLAS DAVIS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 9273-18
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**AFFIRMED IN PART; VACATED IN PART;**
**AND REMANDED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Cody Nicholas Davis**

**Stephen C. Dwight**
**District Attorney**
**Charles H. Robinson**
**Karen C. McClellan**
**Assistant District Attorneys**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 600**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**KYZAR, Judge.**

The defendant, Cody Nicholas Davis, appeals his convictions for possession of a weapon by a convicted felon; illegal possession of a stolen firearm; aggravated flight from an officer; unauthorized use of a motor vehicle; obstruction of justice by tampering with evidence; and aggravated criminal damage to property. For the reasons set forth herein, we vacate Defendant's conviction and sentence on the charge of obstruction of justice by tampering with evidence, remand that matter to the trial court for a new trial, and affirm all other convictions.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged by bill of information filed on May 17, 2018, with possession of a weapon by a convicted felon, a violation of La.R.S. 14:95.1, illegal possession of a stolen firearm, a violation of La.R.S. 14:69.1(A), aggravated flight from an officer, a violation of La.R.S. 14:108.1(C), and unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4. On July 18, 2018, the bill of information was amended to add the charges of obstruction of justice by tampering with evidence, a violation of La.R.S. 14:130.1(A)(1), and aggravated criminal damage to property, a violation of La.R.S. 14:55. Another amended bill of information containing all six charges was filed on September 4, 2018.

Trial by jury began on September 4, 2018. During the trial, the State established that Alvin Beck reported his 2017 Nissan Titan truck missing to the Lake Charles Police Department on April 8, 2018. On April 10, 2018, police received notice of the location of the truck via GPS tracking by SIRIUS XM Radio. Corporal Andrew Malveaux observed Defendant driving a Nissan Titan with an altered temporary license plate. After Corporal Malveaux activated his patrol lights, Defendant led police on a highspeed chase, going approximately seventy-five miles per hour between Lake and Ryan Streets. At the intersection of Ryan and Sale

Streets, Defendant attempted to squeeze between two vehicles, striking both vehicles while in oncoming traffic. Defendant struck a third vehicle on Ryan Street, again driving into oncoming traffic. The pursuit continued until Defendant reached the intersections of Ryan and Eddy Streets. There, Defendant collided with the rear of a Ford F-150 truck, striking the vehicle so hard that it rolled over. During the pursuit, Defendant ran several red lights and weaved in and out of oncoming traffic. Defendant and Dalana Mouton were removed from the truck. Mr. Beck did not give Defendant permission to drive the truck.

Ms. Mouton testified that Defendant threw a gun out the truck window during the police chase. Police recovered a gun in a parking lot on Ryan Street, which Ms. Mouton identified as the gun possessed by Defendant. The recovered gun belonged to Tyler Steel, who had reported it stolen in March 2018. Defendant denied knowing that the truck was stolen or that he had possessed or stolen the gun.

On September 7, 2018, the jury returned guilty verdicts on all counts. Thereafter, Defendant was sentenced to serve six years at hard labor, without benefit of probation, parole, or suspension of sentence, for possession of a weapon by a convicted felon; two years, without hard labor, in the department of corrections for illegal possession of a stolen firearm;[1] four years at hard labor for aggravated flight from an officer; six months in the parish jail for unauthorized use of a motor vehicle;[2]

---

[1] A conviction for illegal possession of a stolen firearm is punishable by imprisonment with or without hard labor. La.R.S. 14:69.1(B). "[A] sentence committing a prisoner to the Department of Corrections is necessarily at hard labor." *State v. Lisenby*, 534 So.2d 996, 998 (La.App. 3 Cir. 1988); La.R.S. 15:824(C)(1). Thus, it is not clear whether Defendant's sentence was to be served with or without hard labor. However, any issue as to the nature of Defendant's sentence is moot because he was adjudicated and sentenced under La.R.S. 15:529.1 to serve three years at hard labor. A separate appeal in that matter is before this court under docket number 21-156.

[2] While Defendant was charged with and convicted of unauthorized use of a motor vehicle, the sentencing transcript indicates that the trial court sentenced Defendant for unauthorized use of a movable. Any issue as to the original sentence is moot because Defendant was subsequently adjudicated a habitual offender and sentenced under La.R.S. 15:529.1 for unauthorized use of a motor vehicle.

2

one year at hard labor for obstruction of justice by tampering with evidence; and six years at hard labor for aggravated criminal damage to property. The trial court ordered the sentences imposed for aggravated flight from an officer and aggravated criminal damage to property to run consecutively and all other sentences to run concurrently.

Under trial court docket number 11424-19, the State filed a habitual offender proceeding to enhance the sentences originally imposed. Defendant was subsequently adjudged to be a habitual offender and resentenced under La.R.S. 15:529.1 for all offenses except possession of a weapon by a convicted felon. The habitual offender proceeding is considered in a separate appeal. *State v. Davis*, 21-156 (La.App. 3 Cir. 4/_/21), _ So.3d _.

Defendant filed a motion for appeal on August 14, 2019, which was subsequently granted. On appeal, Defendant asserts four assignments of error, as follows:

I.    The trial court erred in denying Defense [sic] counsel's motion for mistrial, thereby allowing prejudicial and inadmissible other crimes evidence to be admitted at trial.

II.    The trial court erred in denying several challenges for cause, forcing Defense [sic] counsel to exhaust all her peremptory challenges.

III.    Mr. Davis' conviction and sentence for obstruction of justice by tampering with evidence is unconstitutional as it was rendered by a less than unanimous verdict.

IV.    The jury erred in returning a verdict of guilty of illegal possession of a stolen firearm as the State never proved that Mr. Davis had knowledge the firearm he allegedly possessed was stolen.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find none that are not specifically addressed as an assigned error.

3

## DISCUSSION

### *Obstruction of Justice Verdict*

We first address Defendant's third assignment of error, wherein he contends his conviction and sentence for obstruction of justice by tampering with evidence is unconstitutional as it was rendered by a less than unanimous verdict. We agree, finding that the conviction for this offense must be set aside.

After the jury was instructed, defense counsel objected to the trial court's failure to require a unanimous verdict on all counts. Defendant was tried by a jury of twelve, and eleven of those jurors concurred in the verdict for count five, obstruction of justice by tampering with evidence.[3]

In *Ramos v. Louisiana*, 590 U.S. _, 140 S.Ct. 1390 (2020), the Supreme Court held that non-unanimous verdicts are not permissible under the Sixth Amendment to the Constitution and that the prohibition applies to the states through the Fourteenth Amendment. The present matter was pending on direct review when *Ramos* was decided. Therefore, the holding of *Ramos* applies. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708 (1987). Accordingly, Defendant's conviction and sentence for obstruction of justice by tampering with evidence is vacated, and the matter is remanded for a new trial as to this count.

### *Motion for Mistrial*

In his first assignment of error, Defendant contends the trial court erred in denying his motion for mistrial, thereby allowing prejudicial and inadmissible other crimes evidence to be admitted at trial.

---

[3] Although the minutes of polling do not specifically set forth the offense charged in count five, the State agrees that the conviction and sentence for obstruction of justice by tampering with evidence should be vacated.

4

On August 27, 2018, the State filed a motion for a hearing regarding the admissibility of inculpatory statements made by Defendant during a phone call while he was in the Calcasieu Correctional Center. A hearing on the motion was held on September 4, 2018, prior to the commencement of jury selection. The State submitted the matter on the pleadings, noting that the call was the first call placed by Defendant after being arrested. A copy of the jail call was introduced into evidence. After a discussion regarding the authenticity of the recording, the State made the following remarks:

[T]here are some statements in that jail call that I think are arguably a little unrelated to some other crimes, and I would tell the court we are going to play a redacted version for the jury. We will not let the jury hear any of that stuff. It's just going to be a couple of little clips of what's related to our case. And, so, the court should rest at ease.

Defense counsel then requested that the recording be properly authenticated before it was played for the jury. The trial court allowed the recording "if for no other reason, then just for him to be able to mention it to the jury at that time."

After trial commenced, the State noted that there was an original transcript of the jail call, wherein Defendant stated, "'I got away. They dropped three armed robberies. Man, they got me on three armed robberies[,]'" and that these statements would not be published to the jury. The State further indicated that a redacted copy of the transcript, which deleted "any reference to any other crimes[,]" would be published to the jury so that it would not see "some other crimes evidence that's not at issue in this case." Defense counsel objected to the transcript being published and "unnecessarily bolstering the audio." Defense counsel then requested a limiting instruction regarding the discrepancies between the audio and the transcript, which the trial court agreed to give at the appropriate time.

The State subsequently introduced the audio of the jail call, the transcript of the recording, and the redacted transcript of the recording. Defense counsel objected

5

on the basis of hearsay and to the tender of the transcript. The audio was subsequently played for the jury, after which the jury was asked if it wanted to review the transcript of the call. The redacted transcript was passed out, and the State emphasized that the recorded clips could be found on page 2, line 1; page 3, line 1; and toward the end of page 16. Thereafter, defense counsel asked to approach the bench. The jury was subsequently removed from the courtroom, and defense counsel made the following remarks:

> When I was examining the copy of the redacted transcript that was provided to the jury, I noticed . . . at the bottom of page 4 that the statement -- this statement was not redated, and it says -- Mr. Davis is speaking: The cops got my money, man. I got -- they got -- I got a hundred something. They took the rest of my money that I had, real money; and I had counterfeit money.

Defense counsel argued that the reference to counterfeit money should have been redacted because it was a separate offense, she was not provided notice under La.Code Evid. art. 404(B), and the information was highly prejudicial. Defense counsel further stated that she did not have the opportunity "to address, to discuss redacting it from his transcript or, if it was going to be admitted, at least have a chance to oppose it." Defense counsel then moved for a mistrial. The State argued that the evidence was res gestae, having occurred during the commission of the offenses for which Defendant was being tried; thus, no notice was required. It further noted that defense counsel had been provided with a transcript of the recording and did not seek to have the statement at issue redacted. Defense counsel pointed out that reference to three armed robberies had been deleted and informed the trial court that she relied on the prosecutor's statement that he "would take care of it and that the redaction would include the counterfeit money" because it had nothing to do with the aggravated flight from an officer count. The trial court denied the request for a mistrial and offered an instruction to the jury.

6

The issue was further discussed as follows:

**Ms. George:**

I will note for the record that the first time that I laid out [sic] on this redacted transcript was just now as it was being handed out to the jury. So, I didn't have a prior opportunity to take a look at it; and, if I had, I would have brought it up way before now.

**The Court:**

Well, as I recall the discussions that were had regarding the intended reaction [sic] were to address a statement or statements regarding robberies, armed robberies or something other and; and I agreed with you that that was what was discussed. I don't recall hearing any discussion suggesting that this was an element of redaction that you were expecting. . . .

**Ms. George:**

Yeah, Mr. Robinson and I had discussed the counterfeit money statement; and it was my impression that that would be redacted.

The trial court then clarified that defense counsel understood that Mr. Robinson would redact the reference to the counterfeit money and asked Mr. Robinson to respond. Mr. Robinson stated:

I don't ever remember there even being a conversation that I would agree to redact anything when we talked about the counterfeit money. It's not impossible. I'm not saying that that didn't happen. I'm telling you I honestly do not recall that at all.

In response, defense counsel stated:

[O]f course the armed robberies were discussed; and I said, and all of the other . . . anything that is not appropriate for a jury will be redacted. And that is my understanding of the conversation, that all the crimes would be redacted, not just the armed robberies.

The trial court concluded that the issue "should have been clarified between you and Mr. Robinson." Defense counsel did not want to draw any further attention to the statement, choosing not to have the trial court give the jury a limiting instruction and noting her objection for the record. When the jury returned to the courtroom, the transcripts were picked up.

7

Defendant argues the statement regarding the counterfeit money does not constitute res gestae as it was not so closely connected to or intertwined with the State's case that it could not have presented its case without reference to it. He further argues, "Although the trial court never addressed whether the other crimes evidence was *res gestae*, it apparently felt there was some problems with it's [sic] admission as the court prevented the State from showing the jail call transcript to the jury a second time." Defendant concludes the trial court's denial of the motion for mistrial was an abuse of discretion and cannot be considered harmless error.

Louisiana Code of Criminal Procedure Article 770 sets forth the mandatory grounds for mistrial:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> . . . .
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> . . . .
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

The permissive grounds for mistrial are found in La.Code Crim.P. art. 771:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

8

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Louisiana Code of Criminal Procedure Article 775 further provides, in part: "Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."

In *State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94, the supreme court found that notwithstanding the mandatory language of Article 770, an improper reference to other crimes evidence was subject to the harmless error rule on appellate review. In *State v. Scott*, 09-1658, p. 12 (La. 10/22/10), 48 So.3d 1080, 1087, the supreme court affirmed its prior statement, "Even assuming that the prosecutor placed inadmissible other crimes evidence before jurors regarding the prior firearm possession, and that the court's admonition was not thus sufficient to cure the error, violations of La.C.Cr.P. art. 770(2) remain subject to harmless-error analysis."

In *State v. Lagarde*, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, *writ denied*, 07-1650 (La. 5/9/08), 980 So.2d 684, the defendant argued that the trial court erred in denying his motion for mistrial after the jury viewed an edited version of the defendant's statement that failed to omit a reference to the defendant's arrest for second degree murder. He contended that the mistrial was required under Article 770, and the State alleged it was discretionary under Article 771. The fifth circuit addressed the issue:

As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a "court official." However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the State and triggers the rule mandating a mistrial.

9

In the instant case, the remark was not made by the prosecutor, the judge, or a court official. Further, there is no showing that the prosecutor purposefully introduced the complained of evidence. In fact, the record reflects that both the defendant and the prosecutor inadvertently overlooked the reference in the defendant's statement that the defendant had been arrested for "second degree homicide." Therefore, it appears Article 770 is not applicable.

*Id.* at 1113.

The court went on to conclude, "In the instant case, the record does not reflect whether the jury had heard or saw the reference to the defendant's unrelated arrest. However, even if the jury read or heard the brief reference to the defendant's 'second degree homicide' arrest, any error that occurred was harmless." *Id.* at 1114.

In *State v. Thibodeaux*, 16-542 (La.App. 3 Cir. 3/15/17), 216 So.3d 73, *writ denied*, 17-642 (La. 12/5/17), 231 So.3d 628, the defendant argued that the trial court erred in denying his motion for mistrial after the State played a recorded statement by the defendant containing information about his past drug use, which it had previously agreed to redact. The defendant alleged that his trial counsel received the redacted version of the five-hour statement at 6:00 p.m. the day before it was played to the jury and did not have an opportunity to review the entire statement. Citing *Lagarde*, this court found that the trial court did not abuse its discretion in denying the defendant's motion for mistrial.

In the case at bar, the reference to counterfeit money was in the redacted transcript of the call and not in the audio clips presented to the jury. Moreover, the State directed jurors to the particular pages on which the audio clips could be found, and the reference to counterfeit money was not in the pages referenced by the State. There was a discussion, which also involved the bailiff and the minute clerk, regarding whether all of the jurors read the complete transcript, and it was suggested that at least two of the jurors had not. However, the individual jurors were not questioned as to whether they read that portion of the transcript.

10

If the reference to counterfeit money was improperly placed before the jury, that error is subject to harmless error analysis, "i.e., whether the verdict actually rendered was surely unattributable to the error." *Johnson*, 664 So.2d at 102. It is particularly important to note here that Defendant took the stand to testify and, thus, was subject to full cross-examination. Although not mentioned by the parties in brief to this court, evidence regarding Defendant's possession of counterfeit money was testified to during cross-examination, without objection by defense counsel:

Q.　So, did you have any illegal property in the car whatsoever?

A.　No, sir.

. . . .

A.　Only thing I had was a gun that --

. . . .

A.　-- was a cigarette lighter.

Q.　-- you said you had counterfeit money?

**Ms. George:**

Your Honor, objection. He's interrupting the witness.

Please allow the witness to answer.

Defendant was subsequently asked about the counterfeit money:

Q.　And so I asked you a second ago if you had any illegal property in the car. Do you want to answer again?

. . . .

A.　Well I had three 20-dollar bills of counterfeit and the rest real money, three 20-dollar bills that I had got for some change. Somebody gave me change and slipped it on me. What, out of $7200, three counterfeit bills?

Q.　And you knew they were counterfeit?

A.　I didn't know until -- . . . .

11

Defendant was asked about the matter again:

Q.      [B]ut if I asked you again if you had any illegal property in the car, you're going to tell the first story or the second story, that you had counterfeit money?

A.      The only illegal property that I had was three 20-dollar bills.

Q.      [M]aybe that was why you sped away from cops, you didn't want them to find that counterfeit? That's fair, right, if it wasn't the gun?

A.      Fair, good.

Q.      Because a second ago . . .

. . . .

Q.      -- you said that you didn't know it was counterfeit money until the police told you at the police station.

As set forth above, defense counsel did not object to this line of questioning.

In *State v. Pendelton*, 96-367, 97-206 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, *writ denied*, 97-1714 (La. 12/19/97), 706 So.2d 450, defense counsel failed to object to the admission of a videotape containing other crimes evidence and did not ask that the tape be redacted. Thus, the fifth circuit concluded that the issue could not be raised on appeal. The defendant also argued that the tape was not admissible because the State failed to comply with notice requirements. The court again concluded that the argument was groundless because there was no contemporaneous objection. The court then stated, "In any case, defendant himself testified about these 'other crimes' at trial, thus allaying any prejudice he might have suffered from the admission of the taped statement." *Id.* at 152.

Inasmuch as Defendant testified about the counterfeit money without objection by defense counsel, he did not suffer any prejudice as a result of the information being contained in the redacted transcript of his jail call. Even assuming *arguendo* that it was an error to admit such, the same was harmless beyond a reasonable doubt. *State v. Stockstill*, 19-1235 (La. 10/20/20), _ So.3d _.

12

## *Denial of Challenges for Cause*

In his second assignment of error, Defendant contends the trial court erred in denying several challenges for cause, forcing defense counsel to exhaust all of her peremptory challenges.

> The purpose of voir dire is to determine the qualifications of prospective jurors by testing their competency and impartiality and to assist counsel in articulating intelligent reasons for exercising cause and peremptory challenges. *State v. Stacy*, 96-0221, p. 5 (La. 10/15/96), 680 So.2d 1175, 1178. The grounds for which a juror may be challenged for cause are set forth in La.C.Cr.P. art. 797 and La.C.Cr.P. art. 798. In applicable part, jurors may be challenged if the juror lacks a qualification required by law, if the juror is not impartial, whatever the cause of his partiality, and if the juror will not accept the law as given by the court. La.C.Cr.P. art. 797.
>
> A trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. *State v. Cross*, 93-1189, p. 7 (La. 6/30/95), 658 So.2d 683, 686. Prejudice is presumed when a trial court erroneously denies a challenge for cause, and the defendant ultimately exhausts his peremptory challenges. *State v. Robertson*, 630 So.2d 1278, 1280 (La. 1994). Further, an erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. *Cross*, 93-1189 at 6, 658 So.2d at 686. "[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." *State v. Hallal*, 557 So.2d 1388, 1389-90 (La. 1990).

*State v. Holliday*, 17-1921, pp. 27-28 (La. 1/29/20), _ So.3d _, _, *cert. denied*, _ U.S. _, 141 S.Ct. 1271 (2021) (footnote omitted) (alteration in original).

As Defendant in fact exhausted his peremptory challenges, he need only show that the trial court abused its discretion by denying one of his challenges for cause. Defendant challenges the trial court's failure to excuse prospective jurors Jada Victorian, Karen Hardy, Ross Williams, Jr., and Myles Edwards.

## *Jada Victorian*

Defendant alleges Ms. Victorian stated that she had a hard time staying awake and that the attorneys sometimes bored her. Thus, he claims she was not the type of

13

person that should serve on a jury and should have been excused based on those remarks alone. Defendant further asserts Ms. Victorian felt that the State had to prove his guilt and that it was defense counsel's job to prove his innocence. He contends Ms. Victorian had trouble understanding the concept of innocent until proven guilty as evidenced by her comment, "I'm not going to assume he's innocent because he sits there and smiles and doesn't say anything." Defendant further argues the State never resolved its concern that Ms. Victorian had been accused of a crime despite her statement to the contrary. He avers that the attempted rehabilitation by the trial court and the State was insufficient to change Ms. Victorian's initial views when the voir dire is viewed as a whole. Thus, he contends his challenge for cause should have been granted.

In support of his argument, Defendant cites *State v. Cross*, 93-1189 (La. 6/30/95), 658 So.2d 683, in which defense counsel explained that the defense was not obligated to put the defendant on the stand or to put forth any evidence. When asked by defense counsel, Warner, a prospective juror, indicated that his ability to serve on the jury would be impacted by the defendant's failure to testify during the trial. He admitted that he would be more likely to think that the defendant was hiding something and that he was guilty based on the fact that he did not testify.

No attempt was made by the trial court or the prosecution to rehabilitate Warner once he made his position clear. When defense counsel challenged Warner for cause, the trial court refused to excuse him, forcing defense counsel to use a peremptory challenge. In finding reversible error, the supreme court found:

> A review of the voir dire of Warner demonstrates a number of instances in which he told the court that if defendant failed to testify it would create an impact on his ability to sit as a juror and prompt him to be predisposed to think that defendant must be hiding something. Warner's final words on the issue came in response to defense counsel's query regarding whether he would be more likely to convict based on defendant's failure to testify. Warner asserted that it would "leave him

14

confused, definitely," and answered affirmatively that it would affect his ability to be a fair juror. There was no effort thereafter made by the court or the prosecution to rehabilitate this juror who had clearly stated his inability to follow the law in this regard. A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where *subsequently, on further inquiry or instruction*, he has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. *State v. Welcome*, 458 So.2d 1235 (La.1983), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985); *State v. Passman*, 345 So.2d 874, 880 (La.1977). However, where as here, there has been no attempt to rehabilitate Warner subsequent to his remarks expressing his opinion in this area, the challenge for cause should have been granted.

*Id.* at 687.

When questioned by the State, Ms. Victorian denied having ever been charged with a crime. The State later informed the trial court, outside the presence of the prospective jurors, that although Ms. Victorian did not acknowledge ever having been charged with a crime, it thought that she may have been and wanted to ask her about it in private.

The State asked Ms. Victorian if she was familiar with the Fifth Amendment and explained that neither Defendant nor his lawyer had to say anything; however, if Defendant testified, the law required the jury to weigh his testimony like any other witness. Although Ms. Victorian indicated that she understood this, she admitted that she felt like she needed to hear both sides of the story in order to reach a verdict. However, she said that she could still be fair if Defendant did not present any evidence, "If I felt he was guilty after listening to everything, yes. I felt he was not not guilty, then I would vote whichever way I felt might be okay. Whichever way."

Ms. Victorian was subsequently asked by defense counsel about the efforts of the investigating officers and stated:

I would assume that they had a pretty strong case to be able to present all those charges and prove it because as a prosecutor he has to prove beyond a reasonable doubt that whatever he says he did. And your job is just to prove that your client is innocent. So, he has more

15

responsibility as well as law enforcement to prove that the charges are valid.

Defense counsel next asked her what she thought the presumption of innocence meant. She responded, "It means that he's -- we all have to look at him as innocent until the jury comes up with a verdict, the judge says that he is found guilty." Despite her admitted understanding of the presumption of innocence, Ms. Victorian stated that she still thought it was defense counsel's job to prove Defendant's innocence. However, after rehabilitation by the trial court and further questioning by the State and defense counsel, Ms. Victorian stated:

> Let me clarify. I don't -- you don't have to say a word. He doesn't have to say a word. That doesn't mean he is guilty. It doesn't mean that he is innocent. It's just what you, as his lawyer, chooses to do. I was just trying to explain, you know what I'm saying. If you don't present any evidence and they present all the evidence or they don't present any evidence and you present evidence, it's whatever I believe is true or false based on what you do or don't show me. I'm not going to assume he's guilty because he doesn't say anything or because you don't say anything. I'm not going to assume he's innocent because he sits there and smiles and doesn't say anything. I don't know until the facts are given to me and I interpret it.

In challenging her for cause, defense counsel argued that Ms. Victorian had a deep-seeded belief that the defense had to present evidence on behalf of Defendant to prove he was not guilty. The State, however, contended that Ms. Victorian would follow the law. After the trial court denied the challenge for cause, defense counsel used a peremptory strike to remove Ms. Victorian.

In *State v. Shea*, 421 So.2d 200 (La.1982), *rev'd on other grounds*, 470 U.S. 51, 105 S.Ct. 1065 (1985), the prospective juror indicated that he would expect the defendant to produce some evidence on his own behalf in order to find him not guilty. Upon being instructed by the trial court, and in response to additional questioning, the prospective juror said that "'it would be kinda hard'" but he could and would

16

apply the law according to the instructions given. *Id.* at 205. The supreme court concluded:

> We believe the juror's initial answers in this instance were brought about more from a lack of understanding of the law than bias. From our review of the entire voir dire examination we are convinced of the juror's ability and willingness to decide the case impartially according to the law and evidence. We therefore conclude that the trial judge did not abuse the broad discretion vested in him in ruling on this challenge for cause. *State v. Sheppard*, 350 So.2d 615, 638 (La.1977); *State v. Sonnier*, 379 So.2d 1336, 1352 (La.1980); *State v. Bates*, 397 So.2d 1331, 1333 (La.1981).

*Id.*

While Defendant focuses on Ms. Victorian's response to a question posed by defense counsel, "I'm not going to assume he's innocent because he sits there and smiles and doesn't say anything," he ignores the response she made immediately prior to that response, in which she stated, "I'm not going to assume he's guilty because he doesn't say anything or because you don't say anything." A reading of the voir dire as a whole clearly indicates that Ms. Victorian understood that Defendant did not have to present a defense and was presumed innocent. Any responses to the contrary were reflective of a misunderstanding of the law, which was cleared up through questioning by the trial court, or reflective of a misunderstanding of the context of the question posed by defense counsel. Thus, as in *Shea*, the trial court did not err in denying Defendant's challenge for cause.[4]

### *Karen Hardy*

According to Defendant, Ms. Hardy stated that if she were innocent she would confess, and if she were guilty, she would remain silent. Defendant avers that when voir dire is viewed as a whole, attempted rehabilitation by the trial court and the

---

[4] Defendant incorrectly attributes the trial court's statements about boredom to Ms. Victorian as further grounds reflecting bias. Moreover, the State's failure to clarify whether Ms. Victorian had been convicted of a crime has no bearing on this court's ruling as no challenge was made on this basis.

State was insufficient to change Ms. Hardy's initial views; thus, his challenge for cause should have been granted. Defendant again cites *Cross* in support of his argument.

During questioning, the State asked Ms. Hardy if she could vote guilty if it proved its case beyond a reasonable doubt. She replied, "If I feel I have all of the facts and everything, then, yes, I could." When asked by defense counsel what she would do if she were on trial for a crime, Ms. Hardy responded that she would either confess or would take the Fifth Amendment. She further stated that if she was a juror and Defendant failed to testify, she "would probably think . . . No. I probably why, why you didn't." She later clarified, "The only way it would impact my decision is that if we have all the fact [sic], the witness -- everything would have to be a hundred percent to impact my decision." She explained that enough evidence "looks like the four W's, when, where, and how and why. And had to take those measurements into play, into my decision."

Defense counsel subsequently challenged Ms. Hardy for cause, arguing that she believed only guilty people would not testify. The State disagreed with defense counsel. The trial court stated, "I don't know that what she has said so far would lead me to be inclined to exclude her for cause." Ms. Hardy, when questioned by the trial court about the prior discussion regarding the duties of defense counsel and a defendant's decision to testify, stated:

> It . . . was about how I felt if a defendant did not speak, and I gave her two scenarios. And I believe the first one was if I was the defendant and didn't speak, I would let the evidence speak for me which means like whatever they had as far as the evidence, the witness and that would be it. And then, I said . . . if they did speak, it still would be relevant for what the -- the evidence was. So, I gave her, like, two scenarios.

Ms. Hardy stated that she took the prior questioning to mean what she would do as opposed to what Defendant would do.

18

In response to questioning by the trial court, Ms. Hardy said that she understood that Defendant did not have to take the stand and that his failure to do so could not be used against him. She stated, "He has the right to get up there and speak or not speak." She further indicated that she understood the defense did not have to do anything and that the decision to do nothing did not imply anything. The State eventually declared it was clear that Ms. Hardy would not hold Defendant's silence against him. Defense counsel agreed with the State, but said, "she has not entirely dispelled my reservations about her impartiality. I will maintain my cause challenge and just note . . . my objection." The challenge for cause was denied. According to the minutes of court, Defendant used a peremptory challenge against Ms. Hardy.

Ms. Hardy's comments are clearly distinguishable from those in *Cross*, in that she did not declare an inability to follow the law. It is clear that she understood Defendant's Fifth Amendment rights. Thus, the trial court did not err in denying Defendant's challenge for cause.

### *Ross Williams, Jr.*

Defendant contends that his challenge for cause of Mr. Williams should have been granted, and the trial court erred in failing to do so. He argues that the combination of prescription medications Mr. Williams admitted taking for his medical conditions, given the various side effects, together with his juror questionnaire, indicating that he was not fit for jury service, made him disqualified to serve on the jury.

Defendant cites La.Code Crim.P. art. 401 in support of his argument, which provides, in part:

> A. In order to qualify to serve as a juror, a person must:
>
> . . . .

19

(4) Not be under interdiction or incapable of serving as a juror because of a mental or physical infirmity, provided that no person shall be deemed incompetent solely because of the loss of hearing in any degree.

. . . .

B. Notwithstanding any provision in Subsection A, a person may be challenged for cause on one or more of the following:

(1) A loss of hearing or the existence of any other incapacity which satisfies the court that the challenged person is incapable of performing the duties of a juror in the particular action without prejudice to the substantial rights of the challenging party.

(2) When reasonable doubt exists as to the competency of the prospective juror to serve as provided for in Code of Criminal Procedure Article 787.

During the challenges for cause, defense counsel stated that she would like to question Mr. Williams about the fact that he checked the box on his juror questionnaire indicating that he was not fit for jury service. Under questioning by the trial court, Mr. Williams indicated that he took various medications but denied that they affected his cognitive behavior.[5] He stated, "No. No, it don't. It -- I've got a routine that they teach us that if we get, you know, stressed out, just take your time and concentrate." He further denied that his medication made him sleepy, and he said that he could pay attention.

Defense counsel, after questioning Mr. Williams about his medication, argued to the trial court regarding her own observations and experiences with persons using the medications at issue. In denying the challenge for cause, the trial court stated as follows:

You know, he sat through Mr. Johnson's examination for several hours this morning, didn't seem to be nodding off or concerned; and I -- I just don't see it. I -- and, of course Natasha both of you -- Charlie and I are both involved in the mental health court and we hear a lot about that

---

[5] While the particular medications were named and discussed during the trial and in brief, we find no need to list them here, in deference to the privacy rights of the prospective juror.

stuff. I just don't see it with Mr. Williams at this time. So, I would not strike him for that.

Thereafter, defense counsel used a peremptory strike against Mr. Williams.

A trial court is vested with broad discretion in ruling on challenges for cause.

This is necessarily so because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties' attorneys. Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record. Furthermore, to the extent he or she believes it is necessary or desirable to do so, the trial judge has the benefit of the ability to directly participate in the examination of the members of the jury venire. As such, we are reluctant to reverse a ruling of the trial judge on a challenge for cause where it does not appear from a review of the record as a whole that the trial judge has somehow abused his discretion.

*State v. Lee*, 93-2810, p. 9 (La. 5/23/94), 637 So.2d 102, 108.

The trial court, having the opportunity to observe and interact with the prospective juror, is in the best position to determine if he or she is incapable of serving as a juror because of a mental or physical infirmity or if reasonable doubt exists as to the competency of the prospective juror to serve. La.Code Crim.P. art. 401. Thus, the trial court's observations of Mr. Williams clearly support its ruling denying Defendant's challenge for cause. Based on Mr. Williams's responses and the trial court's observations, we find no error in the denial of the challenge for cause.

### *Myles Edwards*

Defendant alleges that a defense attorney in an unrelated case heard Mr. Edwards telling other prospective jurors that he would rather not be there and would pay anything to get out of jury service. Mr. Edwards denied making the remarks, but Defendant argues that he should have been excluded for cause out of an abundance of caution because his veracity had been called into question.

During jury selection, defense counsel was asked if she accepted or rejected Mr. Edwards. She responded, "Liz heard him say that he'd pay anything to get out

21

of jury service, and he said that to multiple jurors, while he was outside. I'm going to strike him for cause." Mr. Edwards was asked by the trial court whether he suggested to any other jurors that he would rather not be there. He replied, "I haven't said anything yet. I mean, it's not my place to decide who is and who isn't." He further denied that he said that he would pay any amount of money to get out of jury duty. He stated, "No. No, other than my full days of vacation I took for today."

The trial court then informed Mr. Edwards that if he were selected, he would be there the rest of the week. Mr. Edwards stated that would not be a problem. He was further questioned and indicated that he could be fair and listen to the evidence. Defense counsel in her questioning discussed the fact that Mr. Edwards' employer had been calling him throughout the day and his use of a vacation day to appear for jury duty. Mr. Edwards stated that he did not "mind doing [his] civic duty." He denied that he would resent being on the jury because he had to use a vacation day.

Defense counsel subsequently disagreed as to whether Mr. Edwards denied making the statement or whether he jokingly made the remarks. The trial court stated that it would take Mr. Edwards at his word and denied the challenge for cause. Defense counsel then used a peremptory challenge to excuse Mr. Edwards.

We find that Mr. Edwards' veracity was never adequately called into question. Although "Liz" apparently was the attorney who overheard Mr. Edwards, the record does not establish her identity as she did not testify before the trial court. Moreover, when questioned, Mr. Edwards denied making the alleged statement, and he indicated that he could be fair and listen to the evidence. Thus, we conclude that the trial court did not abuse its broad discretion in denying the challenge for cause as to Mr. Edwards. Additionally, this court cannot reverse a trial court's denial of a challenge for cause based on an argument that the challenge should have been granted merely out of an abundance of caution rather than for a specific proven cause.

22

## Possession of a Stolen Firearm

In his fourth assignment of error, Defendant contends the jury erred in returning a verdict of guilty for illegal possession of a stolen firearm because the State never proved that he knew that the firearm he allegedly possessed was stolen.

Illegal possession of a stolen firearm is defined in La.R.S. 14:69.1(A):

> (1) Illegal possession of stolen firearms is the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any form of misappropriation.

> (2) It shall be an affirmative defense to a prosecution for a violation of this Section that the offender had no knowledge that the firearm was the subject of any form of misappropriation.

> (3) It shall be an affirmative defense to a prosecution for a violation of this Section that the alleged offender has or had possession of the firearm pursuant to his regular course of business, is in possession of a valid federal firearms license, is routinely in the possession of firearms for sale, pawn, lease, rent, repair, modification, or other legitimate acts as part of his normal scope of business operations, and is enforcing a privilege pursuant to R.S. 9:4502.

In brief to this court, Defendant argues the State failed to present any evidence that he was involved in the theft of the firearm from its owner or that he knew or should have known the firearm was stolen. Thus, he argues his conviction and sentence should be vacated. In support of his argument, Defendant cites the following jurisprudence:

> As this court noted in *State v. Johnson*, 2009-862 (La.App. 3 Cir. 2/3/10), 28 So.3d 1263, in order to convict a defendant under La.R.S. 14:69.1, the State must prove that he intentionally possessed the firearm, that it was the subject of a robbery or theft, and he knew or should have known that the firearm was the subject of a robbery or theft.

> . . . .

> As this court noted in *State v. Harris*, 18-800 (La.App. 3 Cir. 6/5/19), 274 So.3d 178, 185, *writ denied*, (La. 3/9/20), 294 So.3d 486, " . . . careful review of the record shows a paucity of evidence regarding this offense. Although the State determined that the handgun was stolen from James Smith and that robbery was not reported, the evidence is void of any proof that Defendant was involved with the theft or that he knew or should have known the handgun was stolen.

23

Therefore, we reverse Defendant's conviction for illegal possession of a stolen firearm and vacate the sentence imposed for that conviction."

As the State correctly points out, Defendant relies on the version of La.R.S. 14:69.1, and cases based on that version of the statute, that was in effect prior to August 1, 2014. That version of La.R.S. 14:69.1(A) (emphasis added) provided, "Illegal possession of stolen firearms is the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any robbery or theft under circumstances which indicate that the offender *knew or should have known that the firearm was the subject of a robbery or theft*." The instant offense occurred in 2018. Thus, the version of La.R.S. 14:69.1, as amended in 2014, applies to this case, and the State no longer has the burden of proving Defendant was involved in the robbery or theft or that he knew or should have known that the firearm was stolen.

In *State v. Lemonie*, 20-561 (La. 10/14/20), 302 So.3d 1103, 1104 (per curiam), the supreme court set forth the following definition of illegal possession of a stolen firearm:

Illegal possession of stolen firearms is the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any form of misappropriation. La.R.S. 14:69.1(A)(1). In addition, it is an affirmative defense to a prosecution for illegal possession of stolen firearms that the offender had no knowledge that the firearm was the subject of any form of misappropriation. La.R.S. 14:69.1(A)(2).

Thus, because lack of knowledge is an affirmative defense to La.R.S. 14:69.1, rather than an element thereof, it was for Defendant to plead and establish that he did not know that the firearm he possessed was stolen in order to negate the criminality of his actions. While it is for the "prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged[,]" "[p]roof of the nonexistence of all affirmative defenses

24

has never been constitutionally required[.]" *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327 (1977). In *State v. Cheatwood*, 458 So.2d 907, 910 (La.1984) (footnote omitted), the supreme court discussed justification, affirmative defenses, and the burden of proof thereon as follows:

> A person's otherwise criminal conduct may be justified under certain circumstances. See La.R.S. 14:18. Physical inability to perform an affirmative duty is statutorily recognized as a defense which negates criminal responsibility. Since "justification" defenses are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused's conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of evidence.

In the present case, the jury was properly instructed that to find Defendant guilty it must find that he intentionally possessed a firearm and that the firearm had been taken during a robbery or theft. The trial court addressed the affirmative defense as follows:

> It shall be an affirmative defense to a prosecution for a violation of this section that the offender had no knowledge that the firearm was the subject of any form of misappropriation. Therefore, if you find more likely than not that the defendant had no knowledge that the firearm had been taken during a theft, you should find him not guilty of this offense.

(Case changed from uppercase to sentence case.)

Having found Defendant guilty, the jury rejected any evidence by Defendant that he had no knowledge that the firearm had been stolen. Thus, Defendant failed to prove the affirmative defense. His conviction for the offense of possession of a stolen firearm is affirmed.

## DECREE

Defendant's conviction and sentence for obstruction of justice by tampering with evidence is vacated and this count of the bill of information is remanded to the trial court for further proceedings. Defendant's remaining convictions are affirmed.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**